[No. 21756.   Department One.   May 22, 1929.]

*In the Matter of the Guardianship of* CLAUDINE *and*
LUCILLE GARDELLA, *et al.*,

CLAUDINE GARDELLA *et al., Respondents,* v. SENTO
GARDELLA, *Appellant.*[1]

[1]Reported in 277 Pac. 846.

*H. W. Lueders,* for appellant.
*Henry Arnold Peterson,* for respondents.

FULLERTON, J.—This is an appeal from an order of the superior court of Pierce county settling the account of a guardian.

It appears from the record that the appellant, Sento Gardella, and one Ethel Gardella were formerly husband and wife, and that the wards of the estate in which the account was filed are their daughters. The husband and wife were formally divorced in the year 1920, in an action brought by the wife for that purpose, and in which the property of the spouses was divided. Ethel Gardella died on March 22, 1923, leaving an estate consisting of both personal and real property, and on March 27, 1923, Sento Gardella was appointed administrator of her estate. At the same time, he was appointed guardian of the persons and estates of the daughters mentioned, with one Fred Weber and one Gotfried Ritter as his bondsmen. The estate was settled on December 24, 1924, and a decree of distribution entered in which property of the value of $6,-433.75 was awarded to the daughters. The property was then in the possession of Gardella as administrator, and he thereafter continued in its possession as guardian.

Some years later, the bondsmen petitioned the court in which the guardianship was pending to withdraw as bondsmen of the guardian and be relieved from any further obligation thereunder. A citation was issued to the guardian, and he filed a partial account, in which it appeared that he then had on hand personal

property belonging to his wards of the appraised value of $1,950. The court thereupon approved the account, reduced the amount of the bond required of the guardian from $9,000 to $2,000, and entered an order allowing the bondsmen to withdraw on the substitution of a new bond in the latter sum. Thereafter a bond was furnished by the guardian with other sureties, and an order was entered purporting to exonerate the original bondsmen from any liability on their undertaking. No notice of these proceedings was served upon the wards, nor was any one appointed to represent them in the proceedings.

Nothing further was done in the guardianship proceedings until in July, 1927, when Claudine Gardella, one of the wards, became of legal age. She endeavored at that time to have the guardian turn over to her such of the property of the estate as belonged to her. Failing to obtain relief in this manner, she applied to the court, through counsel, for an order requiring him to account for the property, which order the court granted. The guardian thereupon filed an account with the estate, in which he purported to account for the property he reported on hand at the time of his accounting when his original bondsmen were permitted to withdraw. Exceptions were taken to the account, on the ground that it was incomplete, whereupon the court ordered him to account from the inception of the guardianship proceedings. In the account filed in compliance with this order, the guardian charged himself, if we understand the statement, with total receipts of the value of $6,483.75, and credited himself with having expended on behalf of the ward Claudine, $1,683.02, and on behalf of the other ward Lucille, $1,144.74, leaving remaining in his hands the real property of the value of $2,500, and household furniture and an automobile of a total value of $500, and that

there were against these items outstanding obligations in the sum of $570.08.

Exceptions were taken to this account, and a somewhat extended hearing was had thereon, at the conclusion of which the court found that the guardian had misappropriated of the funds of Claudine Gardella the sum of $1,461.28, and of the funds of Lucille Gardella the sum of $1,974.68, and found that he had possession of the real property, the household furniture and the automobile. The court further found that the guardian had so grossly mismanaged the estate of the wards as to require his removal as guardian of Lucille Gardella, and entered an order to that effect, and appointed another in his stead. It also entered a judgment against the guardian in favor of the wards for the sums it found due them respectively, and directed that he turn over to them the property of which he then had possession belonging to them. While no judgment was entered against the bondsmen of the guardian, it was

". . . ordered that neither of the official bonds of said guardian be exonerated nor his bondsmen discharged until such judgments be paid or otherwise discharged according to law."

The guardian alone appeals.

Noticing the assignments of error in a somewhat different order than they are presented in the briefs, the first is that the court erred in refusing to recognize the orders entered in the first accounting as obligatory on the wards. But, as we have noted, the wards were not represented in that proceeding by any one other than the guardian himself, and he, in making his account, was acting in an adversary capacity in so far as their interests were concerned. The proceeding was, in its substance and effect, *ex parte* as to the wards, and no order entered therein adverse to them

was obligatory upon them. *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945; *In re Sroufe's Estates,* 74 Wash. 639, 134 Pac. 471; *Colkett v. Hammond,* 101 Wash. 416, 172 Pac. 548. The court, therefore, did not err in refusing to recognize the orders as binding upon the wards.

The second objection questions the rulings of the court in refusing to recognize as legitimate many of the items the guardian had charged against the wards. These we shall not notice in detail. It seems that, upon his appointment as administrator of the estate of the mother of the wards, he moved into the house upon the real property, and treated the entire property as his own until he was called upon to account at the time the administration was closed. He hired a housekeeper, and charged the entire expense of maintaining the household to the estate. After the close of the administration proceedings, he continued as before, the only change being that expense of maintaining the household was charged against the wards. It is argued in the briefs of the appellant that, because his charges were not questioned when he filed his final account in the administration proceedings, "it was in effect a statement from the court, 'you may go ahead, these charges are legal.'" But we think the conclusion hardly follows. We are afraid that the wards' interests were not properly represented at the time the estate was closed, and that this is the real cause of the court's approval of the proceedings. But whatever may be the true reason, it would be too much to say that misappropriation of the funds of the estate furnished a justification for a like misappropriation of the funds of the wards. In making up the account, the court allowed the guardian credit for every item that was shown to have been expended for their individual benefit; such as the cost of their wearing ap-

parel, education and the like, and seemingly much that appertained to the cost of maintaining the household. Nor was any charge made against the guardian for the use of the wards' property, which was found to be reasonably worth $35 per month. On the whole, we think the court was liberal rather than otherwise in the allowance of expenditures.

Complaint is made in this connection because the court refused to allow compensation to the guardian for himself and his attorney. But we find no error in his order in this respect. The guardian, as we have indicated, conducted the guardianship proceedings without any apparent appreciation that the property in his charge was the property of his wards. He filed no inventory of the property; he obtained no orders from the court authorizing the expenditures made by him; kept no tabulated accounts of the expenditures, and required no formal vouchers for them. While numerous receipts for bills paid were filed with his account, there is nothing on the face of many of them that would even indicate that they in any way related to the guardianship proceedings. Under these circumstances we are clear there was no error in denying him compensation for his services.

Objection is made to the judgments entered against the guardian in favor of the individual wards, the ground of the objection being that the court is without jurisdiction in this form of proceeding to enter such a judgment. But the judgments were clearly within the powers of the court. We have, in this state, no probate court, as courts of that character were known prior to the adoption of the state constitution. By that instrument, probate courts were superseded and jurisdiction "in all matters of probate" was vested in the superior courts. In dealing in matters of probate, therefore, the superior court does not require the

aid of any other court or the aid of any other form of procedure to fully adjudicate the matters before it. In such instances, it exercises all of its powers as a court of general and superior jurisdiction, and when the justice of the matter requires it to do so, it may enter in the proceeding itself such orders and judgments as the necessity of the matter requires. Our holdings have been uniform to this effect. *In re Sall,* 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885; *In re Williamson,* 75 Wash. 353, 134 Pac. 1066; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386.

It is complained that the order of the court with respect to the sureties was error. Whether the appellant can raise this question, may be doubted, since the order in no way affects him, and he is the sole appellant. But, passing this, the rights of the sureties are not affected by the order, further than it may be conclusive upon them as to the amount of the guardian's defalcation. But even this we do not determine. The bondsmen will have the opportunity to assert their rights in this respect when it is sought to hold them to their liability on the bond.

Finally, it is objected that the order of the court with respect to turning over the property to the wards is in such form that it cannot be literally complied with. But we do not anticipate he will have difficulty on this score. If he does meet with such a difficulty, the trial court will aid him in any good faith effort he makes in that direction. It is not a matter requiring modification by this court.

The orders and judgments of the trial court are affirmed.

MITCHELL, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.