[No. 22427.   Department Two.   September 5, 1930.]

GEORGE E. MATHIEU, *as Guardian, Respondent,* v.
UNITED STATES FIDELITY. & GUARANTY COMPANY
*et al., Appellant.*[1]

[1]Reported in 290 Pac. 1003.

*Preston, Thorgrimson & Turner,* for appellant.
*George E. Mathieu,* for respondent.

MAIN, J.—The plaintiff, as guardian of the estate of Arthur H. Campbell, a mentally incompetent person, brought this action against the ward's former guardian, J. A. Campbell, and the surety upon his bond for the balance found due when such guardian's final account was disapproved and he was removed as guardian. Judgment by default was taken against the former guardian. As to the United States Fidelity and Guaranty Company, the surety, the cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the surety was liable in the sum of $2,500, the amount of the bond. Judgment was entered for this amount, from which the surety company appeals.

The facts essential to be stated are these: May 4, 1922, J. A. Campbell, then residing on Vashon island, was appointed, by the superior court of King county, guardian of the person and estate of his son, Arthur H. Campbell, a mentally incompetent person. The estate of the ward consisted principally of monthly checks drawn upon the treasury of the United States, and issued by the disbursing clerk of the United States Veterans' Bureau. In March, 1923, J. A. Campbell went to Los Angeles, California, for the purpose of establishing a home for himself and family, and there-

after resided there. Later the ward went to California, and resided with his father at a boarding house. In September, 1924, the guardian's wife and minor children went to California to join the guardian and ward in Los Angeles. A home was established for the family, in which they all resided.

The guardian's first account in the state of Washington, covering the period from March 4, 1922, to September 3, 1924, was approved by the court. June 3, 1926, J. A. Campbell, after having been visited by a representative of the veterans' bureau, who made inquiry as to the ward and the condition of his estate, presented a petition to the superior court in Los Angeles, asking for his appointment as guardian there of the person and estate of his son, Arthur H. Campbell, an incompetent person. On September 14, 1926, he was appointed such guardian, and qualified in the manner required by the laws of the state of California. On or about October 25, 1927, J. A. Campbell came to this state to file his final account, and to petition for a discharge in the guardianship here. The result of this application was that the final account was disapproved, the guardian was removed, and George E. Mathieu was appointed guardian of the ward's estate. J. A. Campbell was ordered to pay over to the succeeding guardian a sum in excess of the amount of the bond given by the United States Fidelity and Guaranty Company, the appellant, as surety, the final decree being entered February 7, 1928. After that decree was entered, J. A. Campbell, the guardian appointed in the California court, on August 6, 1928, filed his final report therein, which was approved and he was discharged as such guardian.

As appears from the facts stated, the appellant United States Fidelity and Guaranty Company was surety upon J. A. Campbell's guardianship bond in this state.

It is first contended that the respondent has no capacity to sue as guardian, because his appointment was void and of no legal effect. The argument in support of this contention is based on the assumption that the respondent's appointment should have been made in the manner which the statutes require for the appointment of an original guardian. This was not such an appointment, but was an appointment made after a hearing upon the final account of the former guardian, which was disapproved and the guardian removed. In such a case, the appointment is not made under the same statutes as are original appointments, but under Rem. Comp. Stat., § 1579, which provides that the court shall have power to remove guardians for good and sufficient reasons, and appoint others in their place. This statute makes no requirement as to special notice to the ward or his representative. The parties were all before the court in the final accounting and removal proceeding, and no notice was necessary. The court had jurisdiction of the subject matter, as well as the parties. In 28 C. J., p. 1109, § 169, it is said:

"Where an application for the appointment of a guardian of a minor's estate has once been made and notice duly given, no further application or notice is required to warrant the appointment of a successor to the guardian first appointed."

The case of *In re Green,* 132 Wash. 627, 232 Pac. 689, is to the same effect.

The appointment of the respondent being not subject to attack on the ground of invalidity, he had a right to maintain the present action.

It is next contended that the surety's risk was materially increased by reason of the fact that the guardian left this state, together with the ward, and went to California to reside, and that, for this reason, no judgment could be taken upon the bond. The

guardian removed to California without the consent or approval of the superior court of King county. The bond, which was in accordance with the statute, provided that the guardian would render a fair and just account of his guardianship to the superior court of King county. The removal of the guardian to California and his appointment by the courts of that state did not exonerate the appellant as surety upon the guardianship in this state from liability for funds of the ward received under the original appointment and not accounted for. In 28 C. J., p. 1299, it is said:

"The removal of the guardian to another state and his appointment as guardian by the courts of that state do not exonerate his sureties from liability for funds of the ward received under the original appointment and not accounted for. The sureties are not relieved from liability by the removal of the guardian from the state where they have made no effort to obtain the removal of the guardian from his office on that ground or to obtain their release as sureties on the bond."

Section 1574, Rem. Comp. Stat., provides that the statutory provisions relative to bonds of executors and administrators shall apply to bonds of guardians, and §§ 9942 and 9943 provide a statutory method for a surety to obtain his release upon such a bond. The appellant at no time made any effort to comply with this statute and obtain a release. It is not now in a position to claim that it was released from liability by reason of the removal of the principal from this state. It would be a strange doctrine if the guardian could dissipate the funds of the ward, remove from the state and thereby exonerate the surety from liability.

It is next contended that the guardian, after he left the state, could not be compelled by the courts of this state to account, and that, since an accounting is necessary as a prerequisite to a suit upon the bond, the surety company is not liable, notwithstanding the fact

that the guardian returned to this state voluntarily, presented his final account, which was disapproved and he was removed. The guardian had no power to fix the residence of the ward in the state of California without the permission of the court appointing him. In Volume IV, Bancroft's Probate Practice, p. 2115, it is said:

"A guardian of the person or general guardian 'may fix the residence of his ward at any place within the state, but not elsewhere without permission of the court'."

In 32 C. J., p. 794, it is said:

"Where a person was appointed guardian in one state for the person of the ward, and afterward in another state for his estate, the second appointment was ancillary to the first, although all the estate of the ward was situated in the state of the second appointment, and accordingly the guardian must account in the state where he was first appointed."

■■ It is next contended that, even though the California court's decree approving the guardian's account there was not rendered until after the decree of the superior court of King county in this state, entered February 7, 1928, it must be given full faith and credit. It will hardly be contended that greater faith and credit should be placed in the decree of the superior court of California than would be placed in the decree of a superior court of this state. A transcript of the proceedings in the California court was introduced in evidence in this case, and they fail to show that, upon the hearing there upon the guardian's final account and discharge, the ward was represented by a guardian *ad litem,* or in any other way. In rendering his final account and asking for a discharge, the guardian was acting in an adversary capacity, in so far as the interests of the ward were concerned. Since the ward was

not represented, the decree was not binding upon him. In *In re Gardella,* 152 Wash. 250, 277 Pac. 846, it is said:

"Noticing the assignments of error in a somewhat different order than they are presented in the briefs, the first is that the court erred in refusing to recognize the orders entered in the first accounting as obligatory on the wards. But, as we have noted, the wards were not represented in that proceeding by any one other than the guardian himself, and he, in making his account, was acting in an adversary capacity in so far as their interests were concerned. The proceeding was, in its substance and effect, *ex parte* as to the wards, and no order entered therein adverse to them was obligatory upon them. *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945; *In re Sroufe's Estate,* 74 Wash. 639, 134 Pac. 471; *Colkett v. Hammond,* 101 Wash. 416, 172 Pac. 548. The court, therefore, did not err in refusing to recognize the orders as binding upon the wards."

The discharge of the guardian in California was not binding upon the ward, and his succeeding guardian had a right to maintain this action.

It is next contended that the guardian, upon his removal, was entitled to greater credits than were allowed him at that time, and greater than were allowed by the superior court in this case. The trial court expressly found that J. A. Campbell, as guardian, had mismanaged the affairs of the ward, and that his neglect of duty as such guardian had resulted in detriment to the ward's estate in the sum of at least $2,-685.96. This is a greater sum than that for which judgment was taken against the surety, as above indicated. Without reviewing the testimony in detail, we may say that, after having given the matter diligent consideration, we are entirely in accord with the finding of the trial court that the estate had been mismanaged to the detriment of the ward in the amount indicated. In a

memorandum opinion, the trial court summarized as follows:

"In the final analysis, therefore, the defense of the surety must be based upon the oral testimony of J. A. Campbell in the proceeding before me. His testimony is unsatisfactory. He produced no vouchers, but claimed that he had expended all the funds except those turned over to his successor by (1) paying the bills of his ward, (2) by turning the cash as it was received over to his ward and to the other members of his family to be expended upon the ward, (3) by the expenditure of a portion for an automobile for his ward, and (4) he claimed credits for $300 for furniture broken by the ward, and (5) $675 for his compensation."

The points which we have considered are, in our view, determinative of the controversy, and require the sustaining of the judgment. We have not followed the appellant's argument in detail, and have not reviewed numerous authorities cited by it. It is sufficient to say that we have examined the authorities and considered all the arguments, but we find nothing in the authorities or in the argument justifying a reversal of this case.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and FRENCH, JJ., concur.