No. 33,889

ANNA MARIE FITZPATRICK, *Appellant*, v. THE NATIONAL SURETY COMPANY, and THE NATIONAL SURETY CORPORATION, *Appellees*.

(80 P. 2d 1059)

Opinion filed July 9, 1938.

*Lester M. Goodell* and *Randal C. Harvey*, both of Topeka, for the appellant.

*J. L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster*, all of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action by a ward, after reaching the age of twenty-one years, against the sureties on the bond of her guardian during her minority. Judgment was for defendants, sustaining a demurrer to the petition. Plaintiff appeals.

The petition alleged, first, that plaintiff was a resident of Shawnee county, Kansas; that on April 3, 1920, Lawrence J. Fitzpatrick was by the probate court of Pottawatomie county, Kansas, appointed guardian of the plaintiff, Anna Marie Fitzpatrick, and her sister, Alice Ruth Fitzpatrick, minor heirs of Grace Fitzpatrick, deceased, and his bond fixed at the sum of $4,000; that on the 15th day of April, 1920, Fitzpatrick and the National Surety Company executed and filed a guardian's bond; that the condition of the bond was that if L. J. Fitzpatrick, guardian of the estate of Anna Marie and Alice

Ruth Fitzpatrick, minors, should faithfully discharge his duties as such guardian, according to law, account for, pay and deliver all money and property of the estate, and perform all other things touching the guardianship required by law, or the order or decree of any court having jurisdiction, then the above bond would be void, otherwise it would remain in full force; that the National Surety Corporation in May, 1933, assumed liability upon all bonds signed by the National Surety Company, including the bond in this case; that the bond was approved and filed by the probate court of Pottawatomie county on April 15, 1920, and thereafter Fitzpatrick received property belonging to the minors in the amount of $3,076.52; that during the time Fitzpatrick was guardian of the minors he unlawfully failed to perform his duty as guardian, and dissipated the assets of the estate, and converted them to the use of himself and others not entitled to them and paid out moneys of the estate in violation of law; and violated the trust by unlawful payments out of guardianship funds in the amount of $1,118.57; that he failed to file annual accounts from 1922 to 1934; that he unlawfully loaned guardianship moneys to his father upon insufficient security and for the personal benefit of the guardian; that he invested guardianship funds without approval of the court in stock of an Emporia building and loan association, which afterward failed; that on a day in August, 1934, plaintiff in person and by her next friend, Mrs. R. J. Quigley, filed in the probate court of Pottawatomie county, Kansas, her application to remove Fitzpatrick as guardian, and on August 28, 1934, Fitzpatrick filed in the court his resignation as guardian; that on August 28, 1934, the probate court entered its order accepting the resignation of Fitzpatrick and directed him to file his final account. A copy of the order of the probate court was set out in the petition. It was as follows:

"It is therefore by the court ordered that the resignation of the said Lawrence J. Fitzpatrick as guardian of the said Anna Marie Fitzpatrick be, and the same is accepted, and that the said Lawrence J. Fitzpatrick file his final account as guardian of the said Anna Marie Fitzpatrick on or before the 30th day of September, 1934.

"It is by the court further ordered that if no objections are filed to the said final account of the said Lawrence J. Fitzpatrick within ten days from the filing thereof, that the said Lawrence J. Fitzpatrick turn over the money and property in his hands to Mrs. R. J. Quigley as said guardian, and that she give him her receipt therefor. If objections are filed to the final account of the said Lawrence J. Fitzpatrick, a hearing shall be held upon the same at such time as may be fixed by the court.

"It is by the court further ordered that Mrs. R. J. Quigley be appointed guardian of the person of the said Anna Marie Fitzpatrick, to take effect immediately, and as guardian of the property of the said Anna Marie Fitzpatrick to take effect upon the settlement of the final account of the said Lawrence J. Fitzpatrick."

The petition then alleged that on October 4, 1934, Fitzpatrick filed a purported account of his guardianship from 1922 to 1934, and on October 11, 1934, plaintiff in person and by Mrs. Quigley, her next friend, filed objections to the account; that the guardian's account showed receipts and expenditures from 1922 to 1934, leaving on hand the following:

"Balance on hand ...................................... $0.80
Real-estate mortgage loan, Jerry Fitzpatrick............ 1,536.88
Money in building and loan, Emporia, Kan............. 331.14."

The petition further alleged that plaintiff, in her objection to the final accounting of Fitzpatrick, claimed $2,331.54 to be still due her; that she objected to the final accounting and moved that it be set aside, and that an account set out in her objection be substituted in lieu of it and that Fitzpatrick be directed to turn over to Mrs. Quigley, as guardian, the sum of $2,331.54, with interest; that on April 2, 1935, these objections to the report came on for hearing, were taken under advisement by the court and Fitzpatrick was given permission to amend his report; that thereafter on April 5, 1935, Fitzpatrick filed an amendment to his report; that in this report he stated the amount due from Jerry Fitzpatrick was $1,829.67 instead of $1,536.88, as set out in his former report; that thereafter counsel for plaintiff filed briefs with the probate court upon the objections to the report of guardian, and continuously urged the court to render decision thereon, but that the court had failed to render any decision upon such objections at any time prior to November 7, 1936, or at any time thereafter; that by reason of the fact that the final account of Fitzpatrick as such guardian was never settled the appointment of Mrs. Quigley as guardian of plaintiff to succeed Fitzpatrick never became effective, and he had never turned over any money or property from such guardianship to Mrs. R. J. Quigley or to the plaintiff, either before or after November 7, 1936; that on November 7, 1936, at the time plaintiff became of age, it became the duty of Fitzpatrick immediately to turn over to the said plaintiff the moneys and property in his hands belonging to her, but that he wholly failed to do so

and was liable to plaintiff for the moneys received and used by him, with interest thereon at six percent.

Judgment was prayed in the amount of $2,331.54.

Defendants demurred to this petition on the ground the court had no jurisdiction of the defendant or the subject matter of the action; that the plaintiff had no legal capacity to sue; that several causes of action were improperly joined and the petition did not state facts sufficient to constitute a cause of action.

The demurrer was sustained on the ground that it did not state facts sufficient to constitute a cause of action because it showed on its face that no final accounting had been had in the probate court.

Plaintiff appeals from that judgment.

The argument of plaintiff is that in Kansas a final settlement is not a necessary prerequisite to a suit on a guardian's bond, and that if such were the law the rule would not be applicable; whereas she contends she has made every possible effort to secure a final settlement in the probate court, but has been unable to do so.

This question received the attention of this court in *Mitchell v. Kelly,* 82 Kan. 1, 107 Pac. 782, and *Lohoff v. LaShell,* 109 Kan. 515, 200 Pac. 295. In both these cases the decision turned upon the fact that the statute did not require the guardian of the estate of a minor to make a final accounting. There was that distinction between such an action and an action on an administrator's bond. Subsequent to the decision of the Lohoff case, the legislature enacted G. S. 1935, 38-222. It reads as follows:

"Guardians of the property of minors must account on oath annually, or oftener if required by the court. It may also direct them to give new or additional security, or may remove them for good cause shown, which cause must be entered on the records. Guardians also must make a final accounting and close the estate upon the minor reaching the age of majority. If said guardian should fail to do so the court, by an order, may declare said estate closed: *Provided, however,* Said estate may be reopened within one year upon written application by said minor therefor."

It will be noted the above statute requires a guardian to make a final accounting and close the estate upon the minor reaching the age of majority. There is also a provision that if the guardian should fail to make the final accounting the court may by order declare the estate closed. In this respect the statute as to final accounting by guardians is a great deal like the statute with reference to the final accounting by executors and administrators in the clos-

ing of estates of decedents. (See G. S. 1935, 22-903, 22-904, and 22-906.) .

It has long been the rule that an action cannot be maintained against an executor or administrator or his bondsman until the administrator's accounts have been settled in probate court. (See *Hudson v. Barratt*, 62 Kan. 137, 61 Pac. 737.)

Plaintiffs point out that guardians have always had to make annual settlements, but that a ward may bring an action against his guardian or the guardian bondsman after he reaches majority even though the annual settlements were approved. That rule is not of any help here, however, because the question we are considering is not the binding nature of the final accounting but whether the matter can be the subject of litigation in the district court before all steps required have been taken in probate court. If it should be held that the amendment to the statute did not require the final accounting before the action could be brought, then it is difficult to see what was the object of the amendment. Other states with similar statutes have followed this rule. In *Wilkins v. Deal*, 128 Neb. 78, 257 N. W. 486, the court, in considering this question, said:

"It could not be finally determined that the guardian was in default until there was a settlement of her account at the expiration of her trust, and no action could be maintained on the bond until such judicial settlement was had by the county court, and that court directed the guardian to pay over to the newly appointed guardian such property or funds as the court found due from her." (p. 85.)

In *Vance, Guardian, v. Beattie, Ad., et al.*, 35 Ark. 93, the court said:

"Before final settlement of the accounts of Malone as guardian, and an order of the probate court for him, or his administrator, to pay over to appellant as his successor in the guardianship, some balance found due his wards on such settlement, appellant had no legal cause of action on the bond of Malone. (*Sebastian v. Bryan*, 21 Ark. 447; *Norton et al. v. Miller et al.*, 25 ib., 115.)" (p. 95.)

See, also, *Rouse v. Payne*, 105 N. Y. S. 549, 120 App. Div. 667; also *Allen v. Tiffany*, 53 Cal. 16.

Plaintiff argues that the above rule should not apply to a case like this where the guardian resigned in 1934, and most of the time since that has been consumed in attempting to secure an adjudication on the objections of the plaintiff here to the final account filed by the guardian. The trouble with that argument is that there is no allegation in the petition that the probate court of Pottawatomie county

acted capriciously, arbitrarily or unreasonably in withholding its decision. It is true that the apparent refusal of that court to act is causing vexatious delay. That court should act on the final accounting of that guardian. If it should persist in refusing to act an action in mandamus would be proper to compel action one way or another. We hold, however, that until the matter has been passed on by that court an action such as this cannot be maintained.

The judgment of the lower court is affirmed.

ALLEN, J., dissenting.
HARVEY, J., not sitting.