[No. 29627. *En Banc.* November 24, 1945.]

IRA GRADY, *Respondent*, v. EUGENE DASHIELL *et al., Defendants*, ROYAL INDEMNITY COMPANY, *Appellant.*[1]

[1]Reported in 163 P. (2d) 922.

*Lycette, Diamond & Sylvester* and *Herman Howe,* for appellant.

*Harry H. Johnston,* for respondent.

STEINERT, J.—Plaintiff, Ira Grady, who at one time had been adjudged insane and for whose person and estate a guardian had been appointed, but who at a later time had regained his sanity, brought suit against the defendant Eugene Dashiell, who was the guardian acting at the time of plaintiff's mental restoration, and against American Bonding Company, the surety on Dashiell's bond, and also against Royal Indemnity Company, surety on the bond of Lorenzo Dow, a prior guardian, since deceased, to recover specific sums of money alleged to be still owing to plaintiff, despite certain orders previously made by the probate court in the guardianship proceeding wherein the respective guardians were discharged and their sureties released from further liability on the bonds. The amount sought from Dashiell and American Bonding Company was $52.21, and the amount sought from Royal Indemnity Company was $665.35, with interest. Dashiell, the later guardian, and American Bonding Company, his surety, defaulted in the action. Royal Indemnity Company, the surety on Dow's bond, resisted plaintiff's claim.

The cause was tried to the court, without a jury. The court, after hearing the evidence, made and entered findings, conclusions, and judgment against the respective defendants in the amounts above mentioned. From that judgment, defendant Royal Indemnity Company alone appealed.

Upon its several assignments of error, appellant makes two contentions: (1) that respondent as plaintiff failed to

prove a cause of action; and (2) that the orders releasing appellant upon the bond executed by it are *res judicata* as to the matters here in controversy.

As shown by the trial court's certificate, the only evidence in this case, aside from respondent's own testimony, consists of certain receipts, reports, petitions, and orders filed in the guardianship proceeding and introduced as exhibits in the present action. There is no dispute as to the evidence, but only as to the legal conclusions to be drawn therefrom.

On October 19, 1933, respondent, Ira Grady, then about forty-five years of age, was adjudged insane and was committed to the Western State Hospital at Steilacoom, where he remained until November 5, 1943, at which time he was discharged from that institution as having recovered his sanity.

Respondent has a son, George Grady, who at the time of respondent's commitment was about sixteen years of age. This litigation is founded principally upon certain payments of money aggregating $665, of which $629.75 is alleged to have been paid, as hereinafter described, to George Grady, out of respondent's estate, during the period of the father's incompetency, and $35.25 of which total amount is alleged to have been paid out in settlement of certain delinquent lodge dues owing by the respondent.

On April 24, 1934, after respondent had been committed to the Western State Hospital, one G. E. Hanson was duly and regularly appointed, and thereupon qualified, as guardian of respondent's person and estate. Lorenzo Dow, of Tacoma, acted as the attorney for Hanson.

On January 18, 1938, Hanson filed in the guardianship proceeding his final report, accompanied by a statement of account of his receipts and disbursements, together with a list of checks evidencing his expenditures. The account and checks showed that, during his administration as guardian, Hanson had on various occasions paid to George Grady, for "college expenses," sums of money aggregating five hundred twenty dollars, out of the funds of the estate, and that he had paid to Dow the sum of fifty dollars for legal services. The report also showed that, during the period of his ad-

ministration, Hanson had received a total amount of $3,382.19 and had expended a total sum of $2,132.82, leaving in his possession a balance of $1,249.37.

In that same report Hanson further stated that he was moving from the state of Washington, to be gone for some time, and for that reason he asked that his account be approved, that he be discharged as such guardian, and that his bond be exonerated. The report was signed by Dow as attorney for the guardian and was verified by Hanson.

On the following day, January 19, 1938, an order, presented by Dow, was entered by the superior court, approving the report, discharging the guardian, exonerating his bond, and at the same time appointing Dow, in place of Hanson, as the guardian of the person and estate of the respondent. In that same order the court allowed Hanson the sum of one hundred dollars for his entire services; allowed Dow the sum of fifteen dollars for his services in preparing the report and appearing at the hearing; and further directed Hanson, as guardian, to pay to Pierce county the sum of $176.81 for the accrued maintenance of the respondent while at the Western State Hospital.

No criticism of Hanson's administration or of his final report is made in this action, and we have referred to those matters only for the purpose of showing the condition of the estate at the time Dow became guardian.

On January 24, 1938, Dow qualified as such guardian, in place of Hanson, by filing his oath and a bond in the sum of one thousand dollars, with the appellant herein, Royal Indemnity Company, as surety thereon. The sums of money which respondent seeks to recover from the appellant are alleged to have been improperly paid, or permitted to be paid, by Dow, as guardian, out of the funds of respondent's estate, in the manner hereinafter described.

The condition of Dow's bond, which was given pursuant to Rem. Rev. Stat., § 1573 [P. P. C. § 206-17], reads as follows:

"THE CONDITION of this obligation is such that if the above bounden Principal, who has been appointed Guardian for IRA GRADY shall faithfully discharge the office and trust of

such Guardian *according to law*, and shall render a fair and just account of his said guardianship to the Superior Court for the County of Pierce, State of Washington, from time to time, as he shall thereto be required by said Court and comply with all orders of said Court *lawfully made* relative to the goods, chattels, moneys, care, management and education of such IRA GRADY or his property, *and render and pay to such* IRA GRADY *all moneys, goods and chattels, title papers and effects which may come into the hands or possession of such Guardian, belonging to such* IRA GRADY, *at* such time and in such manner as the Court may order or adjudge, then this obligation shall be void, otherwise to remain in full force and virtue." (Italics ours.)

On January 27, 1938, Dow, as guardian, presented his petition to the court requesting that he be authorized to loan to George Grady, respondent's son, the sum of two hundred thirty dollars. The petition recited that George Grady was then of the age of twenty-one years and had previously been attending the University of Washington, but was presently without funds and was unemployed, and that the loan was for the purpose of enabling him to buy clothes and sustain himself until he found employment. On the same day, the court entered an order authorizing the guardian to make such loan, to be paid back, with interest, two years after that date.

It appears that for a long period of time prior to his commitment for insanity, Ira Grady had been a member in good standing of a certain fraternal order in Tacoma and had been a regular attendant at its meetings. After he became mentally ill, however, his dues fell delinquent, and the members of the fraternal organization, desiring that his membership be not terminated, and thinking that he would in due time recover and then renew his attendance, from time to time contributed sums aggregating $35.25, to be applied on his membership dues. On May 24, 1938, Dow, as guardian, filed in court his petition reciting these facts, together with a statement of respondent's account as submitted by the secretary of the lodge, and requesting that he be authorized to reimburse the members of the lodge in that amount. On that same day, the court entered an

order directing the guardian to pay to the members the amount advanced by them.

The two foregoing petitions, presented by Dow, as guardian, will hereinafter be referred to as the two Dow petitions.

On August 11, 1938, George Grady signed, and apparently in person presented to the court, his petition reciting that he was unemployed and out of funds, and would have to go on relief; also alleging that there were sufficient funds in the estate to care for Ira Grady; and requesting that the sum of one hundred twenty-five dollars be advanced to himself to tide him over until he obtained a job which he expected to secure about the first of September. Upon presentation of that petition, the court entered an order directing the guardian to advance to George Grady the sum of one hundred dollars. It does not appear from the record that Dow, the guardian, or anyone else, appeared on behalf of Ira Grady at the hearing on that petition.

Again, on November 5, 1938, George Grady signed and presented to the court another petition, making similar representations therein concerning his condition of unemployment and asking that he be advanced the sum of one hundred dollars out of the funds of the estate. On the same day, the court entered an order directing the guardian to advance to George Grady that amount. It does not appear from the record that in this instance either Dow or anyone else appeared on behalf of Ira Grady at the hearing on that petition.

On January 13, 1939, George Grady, by petition to the court, made a third request for a loan from the funds of the estate. This petition differed from the preceding two in that it was prepared and presented by Elizabeth Shackleford, as attorney for George Grady. That petition set forth the condition of the estate, reciting that it consisted of cash on hand in the sum of six hundred dollars and three life insurance policies having an aggregate value of twenty-one hundred twenty dollars, in which policies petitioner, George Grady, being the sole heir of Ira Grady, was named as beneficiary upon his father's death; that the monthly income from one of these policies was thirty dollars, and the

monthly expense of the estate, including certain insurance premiums and respondent's maintenance at the hospital, amounted to $20.60; and that the increase in the estate's bank account amounted to $14.83 per quarter, or approximately $4.95 per month. The petition further stated that George Grady, who was then married, was without funds or regular employment, that his wife was in need of medical attention, and that he and his wife would be compelled to go on relief unless an advancement of one hundred seventy-five dollars was made to him from his father's estate. The petition bore the following pencil notation: "O.K. as to form. Lorenzo Dow, Guardian."

On the day of presentment of this petition, the court entered an order thereon directing the guardian to pay to George Grady, forthwith, the sum of *two hundred dollars,* and to take George Grady's note therefor payable, without interest, on the death of Ira Grady, and secured by, and chargeable against, the interest of George Grady in the estate of Ira Grady, and also against his beneficial interest in the afore-mentioned life insurance policies. The record does not show that Dow, the guardian, or anyone else appeared on behalf of Ira Grady at the hearing on that petition.

These last three described petitions, filed by George Grady personally or by his attorney, will hereinafter be referred to as the three George Grady petitions and will be thus distinguished from the two Dow petitions.

Thereafter, on June 5, 1940, Dow, the guardian, died. So far as the record discloses, Dow at no time ever filed an inventory of respondent's estate or any report showing its condition; nor does the record show that there has ever been any administration of Dow's estate.

Shortly after Dow's death, the prosecuting attorney for Pierce county, acting on behalf of the county and of the department of finance, budget, and business of the state of Washington, filed in the guardianship proceeding a petition stating that Ira Grady was still confined in the Western State Hospital, that he was possessed of property which needed care and attention, and that his son, George Grady,

was not qualified to act as the guardian thereof, inasmuch as George Grady was indebted to the estate. The petition requested that Eugene Dashiell, who is one of the defendants named in this action, be appointed as guardian of the person and estate of the incompetent. On July 23, 1940, the petition came on for hearing and the court appointed Dashiell guardian as requested. Dashiell duly qualified by filing his oath and bond in the statutory form, with the defendant, American Bonding Company of Maryland, as surety.

On November 27, 1940, Dashiell filed a report reciting his appointment and the incompetency of Ira Grady, and stating to the court:

"That upon appointment of your guardian herein he, in attempting to determine the assets belonging to said guardianship proceedings, ascertained that it was *approximately the sum of $157.54;* that there should be allowed the *former guardian, for his fees, the sum of $52.24 leaving a balance of $105.30 to be paid over to your guardian from the former guardian or his estate* which sum said former guardian or his estate are now ready to pay to this guardian upon receipt of an order exonerating said former guardianship and his bond." (Italics ours.)

That report further showed that Dashiell had theretofore received the sum of one hundred eighty dollars in continuing monthly payments on one of the insurance policies; that upon receiving the amount owing from the former guardian, and deducting the amount of certain expenses, there would remain a balance of $264.35 cash on hand; and that the sum of $4.50 a week would continue to be paid to the state for the maintenance of Ira Grady, the insane ward.

On the same day that this report was filed, the court entered an order approving the report and authorizing the guardian, Dashiell, to accept from the estate of Lorenzo Dow the sum of $105.30 and thereupon execute a release of Dow as guardian and also the surety on his bond from any and all further liability to the ward's estate. At that hearing, respondent was not represented otherwise than through the acting guardian, Dashiell.

Shortly thereafter, on December 6, 1940, Dashiell filed a petition which, so far as is material here, recited:

"That pursuant to the order of court herein entered on November 27, 1940, your petitioner and guardian herein accepted the sum of $105.30 in full settlement and satisfaction of any and all claims either by this guardianship against Lorenzo Dow, or the Estate of Lorenzo Dow, or the surety upon his official guardianship bond, and the Royal Indemnity Co., a corporation, surety upon said bond, and obtained a full satisfaction and release of any and all claims by the Estate of Lorenzo Dow against the guardianship herein, for any and all claims for services and costs, expenses, or otherwise, and has fully settled all accounts and discrepancies between the former guardian and this estate."

On that same day, December 6, 1940, the court entered an order reciting the foregoing settlement and adjudging that the former guardian, Lorenzo Dow, and his estate, and also his surety, the appellant herein, be discharged and released from any and all liability in the guardianship matter. At that hearing, respondent was not represented otherwise than through the acting guardian, Dashiell.

On February 28, 1941, Dashiell, through his attorney, filed a report showing that he then had on hand cash in the sum of $339.02 and that there was owing to the state for the maintenance of Ira Grady the sum of $257.97. On the same day, the court entered an order, approving the report, directing payment in the sum of two hundred dollars, to apply on the account of the state, and allowing to the guardian and his attorney, each, the sum of forty dollars for their respective services.

The record is silent as to the occurrence of anything affecting the estate of Ira Grady between February 28, 1941, and November 5, 1943. On the last-mentioned date, however, Ira Grady was discharged from the Western State Hospital as one who had recovered his sanity.

On March 27, 1944, Dashiell filed in court his final report and petition for discharge, stating that his ward had been discharged from the hospital; reciting that the guardian then had on hand cash in the sum of $223.14; and asking that the court allow further compensation to the guardian and his

attorney. The court on the same day approved the report, and at the same time authorized the guardian to deduct from the amount on hand the sum of twenty dollars recently paid by the guardian for insurance premiums; awarded to the guardian and his attorney, each, the sum of fifty dollars for their services; and directed that the guardian pay to Ira Grady the balance of $103.14, taking his receipt therefor, whereupon the guardian was to be discharged and the surety on his bond exonerated.

Ira Grady was not present at the hearing, nor was he served with the report or with notice of the hearing. However, on the following day, March 28, 1944, Ira Grady signed a receipt, which was filed in the guardianship proceeding on the same day and which reads as follows:

"Received of Eugene Dashiell, Guardian of the above entitled estate, the sum of One hundred Three dollars and fourteen cents ($103.14), the balance of said estate after the payment of costs and expenses incurred by said guardian herein, and I do hereby release and discharge the said Eugene Dashiell, Guardian herein, of any further liability, and do release and discharge his bond and the sureties thereon."

Finally, on December 19, 1944, the day of trial in the present case, there was filed in the guardianship proceeding an instrument signed and acknowledged by Dashiell on December 6, 1940, for himself as guardian and for and on behalf of Ira Grady, "an insane person," acknowledging receipt of payment of $105.30, and releasing Dow and his estate and the appellant, as surety on Dow's bond, from any and all liability to the guardian or to Ira Grady.

The testimony given by the respondent himself, upon the trial of this action, was very brief, and was simply to the effect that sometime after his discharge from the Western State Hospital he had received from Dashiell's attorney the sum of $103.14, mentioned above, together with a copy of the order authorizing such payment, and that his son, George Grady, who was then living in California, had never repaid him any portion of the amounts loaned to the son from the estate.

It will be noted that in the judgment in this action the trial court awarded recovery against Dashiell and his surety, American Bonding Company, both of whom had defaulted, in the sum of $52.21. This was the amount of money that Dashiell had paid, or credited, to Lorenzo Dow's estate, for fees alleged to have been earned by Dow while acting as guardian for the respondent. That award of recovery was made upon a finding by the trial court that Dow had breached his trust in making the advances and payments mentioned above and in failing to make any report in the guardianship proceeding, and for that reason was not entitled to any compensation at all.

Whether or not the trial court was in error in allowing recovery against Dashiell and his surety in any amount whatever, or whether or not the court should have allowed recovery against them in a greater amount, is immaterial here, because neither Dashiell nor his surety, on the one hand, nor the respondent, on the other, has appealed from that portion of the judgment.

We come now to the contentions made here by the appellant, Royal Indemnity Company, surety on Dow's bond. Its first contention is that no evidence whatsoever was introduced to prove any of the following matters: (1) that the moneys alleged to have been paid or loaned by Dow, as guardian, were ever actually paid or loaned by him; (2) that such money, if paid or loaned, had not been repaid to Dow or his successor; and (3) that the expenditures authorized by the court in the guardianship proceeding were improper.

Appellant does not claim that Dow did not receive from Hanson, his predecessor and client, the sum of $1,249.37, less a deduction of $176.81 to be paid to Pierce county for the maintenance of the respondent at the Western State Hospital, and we are convinced from the record that Dow did receive that amount, less the specified deduction.

With reference to appellant's first contention, as stated above, it may be conceded that there is no direct, affirmative evidence in the record showing that Dow actually paid over to George Grady, or to the fraternal organization, the re-

spective amounts for which recovery is now sought. The question then is whether that fact was otherwise satisfactorily established.

▪ Although the existence of a fact cannot be permitted to rest in speculation or conjecture, it is well settled that any fact in issue may be established by circumstantial evidence if, when the circumstances are shown, they with reasonable in issue. 32 C. J. S. 1099, Evidence, § 1039. *Home Ins. Co.* in issue. 32 C. J. S. 1099, Evidence, § 1039. *Home Ins. Co. v. Northern Pac. R. Co.*, 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L. R. 849; *Vitalich v. Port of Seattle*, 20 Wn. (2d) 182, 146 P. (2d) 819; *Tucker v. Brown*, 20 Wn. (2d) 740, 150 P. (2d) 604.

▪ In our opinion, the circumstances shown by the record in this case prove, with more than reasonable certainty, that Dow paid over to George Grady the amounts charged in the respondent's complaint. Dow knew that Hanson, his predecessor for whom he had acted as attorney, had on a series of occasions paid various sums of money to George Grady before the latter had attained his majority, and while he was in college, as shown by Hanson's final report. In pursuance of that course of procedure, Dow himself prepared and presented the first two petitions, herein designated as the two Dow petitions, requesting that he be authorized to make such payments to George Grady, who had then reached his majority, and to the fraternal organization, respectively. He also penciled his "O. K." to the third one of those petitions hereinabove designated as the George Grady petitions. Certainly Dow would not have taken those steps if he had not intended to pay out the money as soon as the court's orders were entered. If for any good reason he did not pay the money, he would assuredly have taken steps to have the orders set aside, but no such steps were taken. In the meantime, George Grady had procured two other orders from the court, directing Dow to advance to Grady certain sums of money. Certainly George Grady must have presented those orders to Dow for payment, and it is unreasonable to suppose that Dow acted differently with

# NOTICE

**ERRATUM**

In 24 Wn. (2d), p. 284, the 8th line from the top is a duplication of the line immediately following it and should read:

certainty lead to the conclusion of the existence of the fact

reference to such orders than he had acted with respect to the others.

The crowning fact is that although, on or about January 24, 1938, Dow received from his predecessor a sum amounting to almost one thousand dollars, at the time of his death on June 5, 1940, that sum had dwindled to $157.54. If Dow did not pay out the moneys to George Grady, and to the fraternal organization, then he must either have disposed of them otherwise, or else have retained them himself. In either event, the report made by his successor guardian shows that money, in equivalent amounts, was never turned over to the latter. There is no charge, or intimation, of embezzlement on the part of Dow, and the only logical and fair inference to be drawn is that he paid out the moneys as directed, on the strength of the several orders as and when they were procured. There can likewise be no doubt that George Grady and the fraternal organization received the moneys represented by those orders, and the only person from whom they could have received them was Dow, the guardian.

That neither George Grady nor the fraternal organization ever returned to the estate the moneys received by them from Dow is also an irresistible inference from the facts shown by the record. No demand was ever made upon them, so far as the record shows, and it would tax one's credulity to believe that either of them voluntarily repaid the money. So far as George Grady is concerned, it is clear that he procured the loans, not on the theory that his father, Ira Grady, would recover from his mental illness and subsequently demand the return of the money, but that he would die in the hospital, leaving George Grady the sole heir of what then remained of his estate. Moreover, the record shows convincingly that George Grady has at all times been insolvent and unable to repay any of his indebtedness.

There is another answer to these contentions made by the appellant. Money or other property held by a guardian for his ward constitutes trust funds. In an action for an accounting against a trustee, the existence of the

286

trust having been established, the burden is upon the trustee to make or prove a satisfactory accounting of the funds coming into his possession. 65 C. J. 904, Trusts, § 790. *In re Carlson,* 162 Wash. 20, 297 Pac. 764; *Tucker v. Brown, supra.* By Rem. Rev. Stat., § 1575 (now appearing as Rem. Supp. 1941, § 1575 [P. P. C. § 206-21]), it is specifically provided that it shall be the duty of the guardian of any estate, at the expiration of his trust, fully to account for, and pay over, to the proper person, all of the estate of the ward, remaining in the guardian's hands. There has been no accounting of the funds here in question, other than that they were paid out on the several orders of court.

It is true that this is not strictly an action, or proceeding, against Dow or his estate for an accounting. It is an action, against the surety, for a specific sum of money which came into the possession of the guardian, and for which he has not accounted. By the terms of its bond the surety became obligated to the respondent, to the extent of one thousand dollars, for any amount which the guardian should fail to pay over at the expiration of his trust. Upon it therefore rested the burden of furnishing an accounting, upon the failure or impossibility of the guardian to do so, or else to pay to the estate the amount owing to it by the guardian upon his death.

This, then, presents the question, raised by the appellant, whether the payments made pursuant to the orders above mentioned were proper. On that question we entertain no doubt as to their impropriety, regardless of the fact that the court from time to time approved the petitions therefor and entered orders directing payment of the various amounts.

It will be remembered that George Grady had reached his majority when these funds were advanced to him. There was no legal, or even moral, obligation resting upon Ira Grady, the insane ward, or upon his estate, to advance money for the care and support of George Grady or of his wife. How long Ira Grady would remain in the Western State Hospital no one then knew. It was thought by those who were connected with, or interested in, his estate that his condition was incurable. There were certain

expenses for his maintenance and support, which were fixed and recurrent, and for these his estate would be liable. The estate should not have been depleted by giving or loaning its assets to an insolvent, from whom no return could possibly be expected.

The payment to the fraternal organization concededly stands upon a somewhat more reasonable and respectable footing. However, it was not for the guardian, nor even for the lodge, to say whether or not Ira Grady, though insane, should nevertheless retain his membership in the order. That was a matter for him to determine, if he were *compos mentis*, and if he were not, no one could thrust continued membership upon him by drawing upon his estate. Furthermore, the record reveals that the payments made for his benefit by members of the lodge constituted purely voluntary and gratuitous acts on their part. They could not, however, convert their acts of friendship or charity into legal obligations. By bringing this action, upon his restoration to sanity, respondent has repudiated those expenditures, as he had the right to do, and the trial court in this action rightly held that the payments made to both George Grady and the fraternal organization were improper.

In addition to what has been said regarding the impropriety of all these payments and the orders on which they were based, it should be remembered that the three petitions submitted by, or on behalf of, George Grady were heard and their requests granted by the court, wholly without any representation whatever of Ira Grady, or his estate. Dow, the guardian, did not appear at those hearings, but, so far as the record shows, failed to resist them in any way. The proceedings were, in substance and effect, *ex parte* as to Ira Grady, and any order entered therein adverse to him was not binding upon him. *In re Gardella,* 152 Wash. 250, 277 Pac. 846; *Mathieu v. United States F. & G. Co.,* 158 Wash. 396, 290 Pac. 1003; *In re Teeters,* 173 Wash. 138, 21 P. (2d) 1032; *In re Deming,* 192 Wash. 190, 73 P. (2d) 764.

With respect to the two petitions presented by Dow, and the orders thereon, it may be conceded that the ward, Ira Grady, was technically represented by the guardian

Dow at the hearing on those petitions, and that the orders were therefore *prima facie* correct and valid. *In re Deming, supra.* But that case also announced the rule that *ex parte* orders, current reports, and other proceedings passed upon by the court during the pendency of the trust, while *prima facie* correct, nevertheless remain within the control of the court, so that before final settlement and discharge of the guardian, they may be set aside, modified, or corrected, if the requirements of justice demand such action.

In this instance, neither the guardian Dow nor his estate has ever made final settlement with the ward, nor have they been legally discharged, because the order purporting to discharge them, being adversary to Ira Grady's interest and having been entered without notice to or representation of him, was void. *In re Sroufe's Estates,* 74 Wash. 639, 134 Pac. 471; *In re Gardella, supra; Mathieu v. United States F. & G. Co., supra.*

Appellant's final contention is that the two orders, dated November 27, 1940, and December 6, 1940, respectively, releasing it as surety on the bond of Lorenzo Dow, as guardian, are *res judicata* as to the matters here in controversy. That contention is founded upon the alleged compromise and settlement made between Dashiell, the later guardian, and the estate of Dow, for whom appellant was surety. In support of its contention, appellant relies upon that portion of Rem. Rev. Stat., § 1576 [P. P. C. § 206-23], which provides:

"Guardians of minors, insane or mentally incompetent persons, or their property, shall have power and authority to represent their wards in all matters, and may sue and be sued as such guardian, and such wards shall be bound by any compromise or settlement made by such guardian."

That section of the statute contains, however, this restrictive provision:

"Before making any such compromise or settlement, the guardian shall file with the court which appointed him a petition setting out the nature of the suit, claim or dispute, together with the reasons for settling or compromising the same. . . ."

The only petition purporting to comply with the fore-going restrictive requirement is the "report" made by Dashiell, as guardian, on November 27, 1940, in which he merely stated that in attempting to determine the assets belonging to the guardianship estate, he ascertained that they amounted to the sum of approximately $157.54; that of this amount there should be allowed to the former guardian, Dow, for his fees, the sum of $52.84, leaving a balance of $105.30, to be paid over to the succeeding guardian, Dashiell; and that the former guardian, or his estate, was then ready to pay over that amount to the successor upon receipt of an order exonerating the former guardian and his bond.

There was nothing in that report which suggested to the court that there was, or might have been, any impropriety on the part of Dow in securing the orders above mentioned or in paying out the moneys for the purposes above set forth; there was nothing to indicate that a dispute existed between Dashiell and Dow, or his estate, as to the correct amount to be turned over to Dashiell; no reason was assigned for settling such dispute, if one existed. On the contrary, the report constituted a representation to the court that the correct amount to be turned over to Dashiell, after allowing Dow an attorney's fee, was $105.30. The court was never called upon, nor given the opportunity, to determine the regularity or propriety of Dow's former actions as guardian, or to call upon him or his estate for an account-ing and surrender of all assets of the estate to Dashiell, that being a function which the court alone was empowered to perform under Rem. Rev. Stat., § 1579. Dashiell's report in effect apprised the court that all former proceedings had been regular and that as a result only $105.30 then re-mained in the estate. If that had been the true state of affairs, the court's order releasing Dow and his surety might have been proper and valid, but, under the circum-stances here shown, the alleged compromise and settlement did not comply with the requirement of Rem. Rev. Stat., § 1576, and therefore did not bind Ira Grady or his estate.

 In this connection, appellant further contends that respondent's present action cannot be maintained, because it is a collateral attack upon an order which was, at most, voidable, and not absolutely void. Assuming, for the sake of argument, that this action is a collateral attack, we do not agree that the order here attacked was merely voidable, but rather do we deem it wholly void, at least so far as respondent is concerned. The guardian, Dashiell, had no power or authority to compromise or settle a claim against Dow, or his estate, until and unless he filed a petition setting up the requirements enjoined by Rem. Rev. Stat., § 1576, and until such a petition was filed and presented the probate court was without jurisdiction to enter an order authorizing such compromise or settlement. That order was therefore void, and, being so, was subject to collateral attack. *Picardo v. Peck,* 95 Wash. 474, 164 Pac. 65; *State v. Bayles,* 121 Wash. 215, 209 Pac. 20; *France v. Freeze,* 4 Wn. (2d) 120, 102 P. (2d) 687.

 In the consideration of this case we have been cognizant of the generally accepted rule, as stated in 25 Am. Jur. 122, Guardian and Ward, § 196, and in 39 C. J. S. 389, Guardian and Ward, § 213, that ordinarily an action cannot be brought on a guardian's bond until and unless the amount due the ward is first ascertained by the settlement of the guardian's account. However, as stated in those selfsame sections of the foregoing treatises, many special circumstances have been recognized by the courts as furnishing adequate grounds for dispensing with, or relaxing, the general rule. For instance, American Jurisprudence, in the volume and section above cited, states:

"Among the various circumstances adduced in favor of relaxing the rule are the refusal of the probate court to act on the accounting; the death or insolvency of the guardian, his absence from the jurisdiction, or his refusal to account; the lack of an administrator for a deceased guardian; the fact that such an administrator could acquire no information which would enable him to file an account; the death, marriage, or attainment of majority of the ward; and the fact that the amount claimed is susceptible of ascertainment without an accounting."

Also, in Corpus Juris Secundum, in the section above cited, the holdings of the courts with respect to special circumstances dispensing with an accounting and settlement, as prerequisite to an action on the bond, are summarized in this language:

"It is not necessary where the extent of the surety's liability has been otherwise as definitely determined as it could be by accounting. Likewise, where an accounting is impossible or impracticable, an action lies to establish the extent of the liability of the sureties."

Many of the circumstances referred to in the quotations above are present in this case, but we here rely principally upon two grounds: (1) that the amount here claimed is susceptible of ascertainment without an accounting; and (2) that, under the facts shown by the record, an accounting by Dow's estate would be impracticable and impossible, and any attempt to obtain one would be futile.

What the respondent is seeking in this action is not an accounting of Dow's entire administration as guardian, but simply the recovery of a specific amount alleged and shown to have been improperly loaned or given away by him. A general accounting, even if obtainable, would be a waste of time, for the only claim made by the respondent concerns a definite amount.

The judgment is affirmed.

BEALS, C. J., MILLARD, BLAKE, MALLERY, and GRADY, JJ., concur.

JEFFERS, J. (dissenting)—I am unable to agree with the majority opinion, and therefore dissent.

May I say at the outset that I think I fully appreciate the duties and liability imposed by the statutes upon a guardian and his bondsmen, but the liability so imposed does not, in my opinion, relieve the ward, in an action against the surety on the guardian's bond, from proving the facts alleged in his complaint and not admitted.

I am of the opinion that the judgment in the instant case is not justified by the facts which were established by competent evidence, but can only be arrived at by piling presumption on presumption.

The claimed basis of respondent's right to recover in this action is that the guardian, Lorenzo Dow, had in his possession money belonging to the estate of Ira Grady, an insane person; that the amount of money sought to be recovered in this action was unlawfully paid out by the guardian on orders made by the superior court for Pierce county; that *such money has not been returned* to the guardian and that the estate of Ira Grady has been depleted to that extent; that the estate of Lorenzo Dow is insolvent and unable to account for and pay over the amount of money so unlawfully paid out, and that therefore appellant surety is liable.

Let us now see what the record shows in regard to the proof of the facts alleged.

It is admitted that there was no affirmative showing that Mr. Hanson, the former guardian of the estate of Ira Grady, ever actually turned over to Lorenzo Dow one cent belonging to Ira Grady's estate, nor is there any receipt or other affirmative showing on the part of Mr. Dow that he ever received any money belonging to the estate. However, the majority opinion states: "We are convinced from the record that Dow did receive that amount ($1,249.37), less the specified deduction ($176.81)."

The amount of the judgment herein represents the total of the money ordered to be paid by five separate orders of the superior court for Pierce county. It is not claimed that, in presenting to the court the petitions upon which the orders were based, there was any misrepresentation, and it is apparent from the record that the petitions state fairly the facts upon which the orders were based. Four of these orders directed the guardian to make loans to George Grady, adult son of Ira Grady. Only one of the petitions upon which the above orders were made was presented by the guardian, Lorenzo Dow, the other three being presented personally by George Grady or his attorney. It does not appear that Mr. Dow knew of the hearings on at least two of the petitions presented by George Grady.

There is no affirmative showing that Mr. Dow ever paid over to George Grady any money, as directed by the orders, or that George Grady ever actually received any money

from Dow, or that, if George Grady did receive money from Dow, he has not paid it back. Again, the majority opinion states that the circumstances shown by the record prove with more than reasonable certainty that Dow paid over to George Grady the amounts charged in respondent's complaint.

Assuming, then, that the statement last above made is correct, that in itself is not sufficient to establish liability against the estate of Lorenzo Dow or against appellant, for it is entirely possible that George Grady has repaid to the guardian the money claimed to have been paid to him pursuant to the orders. So it seems to me it must follow that, before appellant can be held liable, it must appear that the estate of Lorenzo Dow was unable to account for the money so paid out and, upon a proper demand being made, unable to pay over to Ira Grady the amounts so unlawfully paid out.

It does not appear that any demand was ever made upon any person legally entitled to represent the Dow estate for an accounting of the funds belonging to the Ira Grady estate, or for a return of the money claimed to have been unlawfully expended; and it is apparent, I think, that no such demand could have been made, because it is admitted there has been no administration of the Lorenzo Dow estate. However, apparently attempting to excuse the necessity for such a demand, it is alleged in the complaint that the estate of Lorenzo Dow was insolvent, but there is not one scintilla of evidence in the record to that effect.

It is stated in the majority opinion that, the trust having been established, it was the duty of the guardian, at the expiration of his trust, to fully account for and pay over to the proper person all of the estate of the ward remaining in his hands, and that there has not been any accounting in this case. That is true, but the reason is that Mr. Dow died, and that being the situation, the only person who could legally make such an accounting was some one appointed by the court to represent the Dow estate.

The only attempted showing by Mr. Grady of the amount of money still in the Dow estate belonging to Ira Grady,

or of any demand made upon the Dow estate or appellant for an accounting, was by the introduction of a report made by Mr. Dashiell, the guardian who succeeded Mr. Dow. A part of that report is quoted in the majority opinion, and will not be quoted again. All that this report shows is that Mr. Dashiell in some manner determined that the Dow estate had approximately $157.54 belonging to the Ira Grady estate,

" . . . which sum said former guardian or his estate are now ready to pay to this guardian (Dashiell) upon receipt of an order exonerating said former guardianship and his bond."

Again we call attention to the fact that, at the time such report was filed by Mr. Dashiell, Mr. Dow was dead and no executor or administrator had been appointed. This being true, who then had any legal authority to so bind the Dow estate as to establish any liability of appellant?

I am firmly of the opinion respondent is not entitled to recover in this action, as he has not alleged nor do the facts show that there has ever been a settlement of the guardian's account and a determination of how much, if anything, the guardian should pay over to Ira Grady; and this, it seems to me, is not only the logical but the necessary procedure which must be followed to establish liability on the part of the surety on the guardian's bond.

I am further of the opinion that orderly procedure requires and our statutes contemplate that, in a case such as now before us, where the guardian has died without making any final account or report, in the event no executor or administrator has been appointed to administer the estate of the deceased guardian, a personal representative be appointed, and that such representative be required to account for and turn over to the proper person any property belonging to the guardianship estate coming into his hands as such administrator or executor, or if it be determined in a hearing on such account that the deceased guardian has unlawfully paid out funds of the guardianship estate, that a determination be had of the amount of such unlawful payment or payments, and that an order be en-

tered requiring that the amounts found to have been unlawfully paid out be paid over to the ward or his legal representative. Such a determination would then fix the liability on the guardian's bond.

Regardless of the authority which may be found to the contrary, I am of the opinion that this court has recognized that the death of a guardian does not change the requirement that an account of the acts of such guardian be filed.

In *State ex rel. Nat. Bank of Commerce v. Frater,* 18 Wn. (2d) 546, 140 P. (2d) 272, we quoted with approval the following statement found in 25 Am. Jur. 37:

" 'The relation of guardian and ward is necessarily terminated by the death of either the guardian or the ward.

" 'After the termination of the guardianship by any of the above-named events, any exercise of legal authority as guardian would be unauthorized and void; but it is still the duty of the guardian, or, *if the termination is by his own death, of his personal representatives,* to render an account and turn over the property in his hands to the proper person, and the guardianship continues, in a sense, to exist for that purpose only.' " (Italics mine.)

In support of my contention as to the necessity for an accounting in order to fix the liability on the guardian's bond, I call attention to the following cases:

*Rouse v. Payne,* 105 N. Y. S. 549, at p. 551:

"It is unnecessary to consider whether these decisions go to the extent claimed by the respondent, or are distinguishable from the case at bar, as the result of the authorities is that no action can be maintained against sureties on the bond of a general guardian *until there has been an accounting before the surrogate and a decree or order made establishing the default and the extent of the deficiency.* [Citing cases.]" (Italics mine.)

While the case of *Vance v. Beattie,* 35 Ark. 93, is an old case, I am of the opinion the following rule announced therein is still a sound and generally accepted rule:

"Before final settlement of the accounts of Malone as guardian, and an order of the probate court for him, *or his administrator,* to pay over to appellant as his successor in the guardianship, some balance found due his wards on such

settlement, appellant had no legal cause of action on the bond of Malone. [Citing cases.]" (Italics mine.)

See, also, as to the necessity of an accounting before an action can be brought to recover on the guardian's bond, *Allen v. Tiffany,* 53 Cal. 16.

In the case of *Fitzpatrick v. National Surety Co.,* 148 Kan. 303, 80 P. (2d) 1059, 119 A. L. R. 79, the rule announced in *Vance v. Beattie, supra,* is cited with approval. The *Fitzpatrick* case also cites with approval the following quotation from *Wilkins v. Deal,* 128 Neb. 78, 257 N. W. 486:

" 'It could not be finally determined that the guardian was in default until there was a settlement of her account at the expiration of her trust, and no action could be maintained on the bond until such judicial settlement was had by the county court, and that court directed the guardian to pay over to the newly appointed guardian such property or funds as the court found due from her.' "

The majority opinion attempts to escape from the force of the above rule by stating that the rule is not applicable where the amount claimed is susceptible of ascertainment without an accounting. How appellant's liability could be ascertained in the instant case without an accounting and upon the record presented, I frankly admit I am unable to see.

The majority opinion also states that, under the facts shown by the record, an accounting of Dow's estate would be impracticable and impossible. Again I am at a loss to understand what there is in this record from which it could be concluded that an accounting by a personal representative of the Dow estate as to the Dow guardianship would be impracticable or impossible or futile.

For the reasons assigned, I am of the opinion the judgment should be reversed and the action dismissed.

ROBINSON and SIMPSON, JJ., concur with JEFFERS, J.