MARR'S SHORT STOP OF TEXAS, INC., Appellant,

v.

UNITED STATES FIRE INSURANCE COMPANY, Appellee.

No. 11–82–020–CV.

Court of Appeals of Texas, Eastland.

Dec. 2, 1982.

Rehearing Denied Jan. 6, 1983.

Mike Davis, Byrd, Davis & Eisenberg, Austin, for appellant.

L.W. Anderson, Ray, Anderson, Shields, Trotti & Hemphill, Dallas, for appellee.

DICKENSON, Justice.

The issue on appeal is whether the pilot of an airplane which crashed and killed all aboard was "properly rated for the flight" within the meaning of an aviation liability insurance policy.[1] The jury answered one issue against the insurance company, but it answered the other issue in its favor. The trial court disregarded the first answer and rendered judgment for the insurance company in the sum of $213,956.81 plus interest and costs.[2] The owner of the airplane appeals. We reverse and render.[3]

The two issues submitted, as answered by the jury, are:

1. The policy contained a "Pilot Clause" which provided that: "Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight: Ronald Eugene Marr."

2. United States Fire Insurance Company, having paid this sum of money to the bank which had a lien on the airplane, sought a subrogation recovery from Marr's Short Stop of Texas, Inc., under the endorsement which provides:

    Whenever the Company shall pay the Lienholder any sum for loss or damage under this policy and shall claim that, as to the Insured or owner, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the weather conditions existing at the beginning of the flight in question when Ronald Eugene Marr and his passengers took off from Lakefront Airport on September 20, 1979, were IFR?

Answer: We do not.

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that at the inception or beginning of the flight of September 20, 1979, Ronald Eugene Marr knew that he would be flying in IFR weather conditions?

Answer: We do.

The jury had been instructed that "IFR[4] weather conditions are conditions less than the minimums prescribed for VFR[5] flight." The regulations show that VFR minimums in a control zone (where the takeoff occurred) require that the clouds must be at least 1000 feet above the ground and also require a visibility of three statute miles. The crash occurred outside the control zone, and VFR minimums there require only that the aircraft be "clear of clouds" and have a visibility of one statute mile. The trial court properly instructed the jury in accordance with the Federal Aviation Regulations.

Both parties moved for judgment. The jury's answer to the first issue supports

the rights of the Lienholder against the Insured or owner.

3. The trial court also instructed a verdict for the insurance company in connection with its suit for a declaratory judgment that it was not obligated to defend two wrongful death claims pending against Marr's Short Stop of Texas, Inc. That aspect of the judgment has been severed by the trial court and docketed as a separate suit.

4. IFR is the abbreviation for Instrument Flight Rules. See Federal Aviation Regulations, sections 61.3(e) and 91.115.

5. VFR is the abbreviation for Visual Flight Rules. See Federal Aviation Regulations, sections 91.105 and 91.107.

the owner, but the jury's answer to the second issue supports the insurance company. We hold that the evidence is legally and factually sufficient to support the jury's answers to both issues. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Without stating the evidence at length, the record shows that the weather conditions were poor on the morning of the take-off, but the tower control operator testified that the weather had improved to the point that VFR conditions existed at the time of take-off. There is also ample evidence to show that the pilot knew when he took off that he would be flying in IFR conditions at some time before the end of his flight. The record also contains sufficient evidence to support contrary findings by the jury on each issue. The fact that the pilot filed an IFR flight plan does not change the weather conditions which existed at the beginning of the flight. We are not permitted to substitute our judgment for that of the jury on these disputed factual issues. Our task is to determine the legal effect of these findings, and we are bound to follow the holdings of the Texas Supreme Court in *Glover v. National Insurance Underwriters,* 545 S.W.2d 755 (Tex.1977),[6] which established the rules for deciding whether a pilot is "properly rated for the flight" when he takes off with "full knowledge of inclement weather conditions" even though he does not have the required ratings for IFR flight and proceeds to operate the aircraft "under conditions which required an instrument pilot rating." See the stipulated facts in *Glover,* supra at 759. In holding that such a pilot was properly rated under a similar insurance policy, the Supreme Court said, supra at 761:

> (W)hen the language of an insurance contract is ambiguous, that is, is subject to two or more reasonable interpretations, then that construction which affords coverage will be the one adopted.

The *Glover* opinion then rejected a construction of the policy which "would be to have coverage flickering on and off as the airplane entered and departed from differing weather conditions." *Glover* then held, supra at 762:

> We therefore hold that "the flight," as used in the pilot warranty clause, refers to the entire time the aircraft is in flight; and "the flight" must be looked at as a whole, rather than in segments, in determining its IFR or VFR character.

> The remaining question is whether the flight of the aircraft in this case was a VFR flight, for which the pilot was properly rated, or an IFR flight, for which he was not. *The answer to this question depends on at what point in time the status of the flight should be determined.* We have concluded, as did the *King Craft* court [see *National Insurance Underwriters v. King Craft Custom Products, Inc.,* 368 F.Supp. 476 (N.D.Ala.1973), aff'd per curiam, 488 F.2d 1393 (5th Cir.1974) ], *the flight should be characterized as of its inception.* The weather conditions at the beginning of the flight should thus be looked to in determining whether the flight is a VFR flight or an IFR flight. . . . (Emphasis added)

> *We are not inclined to consider as controlling the pilot's knowledge of weather conditions along his flight path or at his destination* in characterizing a flight as an IFR flight or VFR flight. . . . Inquiries into the reasonableness of a person's actions might best be ignored in determining the coverage of an insurance policy designed to protect one from the consequences of one's own negligence. (Emphasis added)

We hold that under the controlling precedent of *Glover v. National Insurance Underwriters,* supra, the jury's answer to the second issue in this case is an immaterial issue which must be disregarded. Since the insurance company failed to secure an affirmative finding on the first issue, a matter upon which it had the burden of proof, judgment should have been rendered in favor of the owner because the insurance

---

**6.** See also *Northwestern Flyers, Inc. v. Olson Brothers Manufacturing Co., Inc.,* 679 F.2d 1264 at 1273 (8th Cir.1982).

company failed to prove the pilot was not "properly rated for the flight."

We sustain appellant's second and third points of error.[7] We overrule appellant's points 5 and 6 which challenge the legal and factual sufficiency of the evidence supporting special issue 2, and we need not discuss appellant's points 1 and 4 in view of our holdings on points 2 and 3. We also overrule appellee's cross-points which challenge the legal and factual sufficiency of the evidence supporting special issue 1.

The judgment of the trial court is reversed, and we render judgment that United States Fire Insurance Company take nothing.

**7.** POINT OF ERROR TWO: The trial court erred in failing to render judgment for defendant in conformity with the jury's answer to the determinative issue, Special Issue No. 1.

POINT OF ERROR THREE: The trial court erred in rendering judgment for plaintiff because Special Issue No. 2 is not an ultimate issue which will support judgment.