**NATIONAL INSURANCE UNDERWRIT-
ERS, a Missouri reciprocal and interin-
surance exchange, by National Aviation
Underwriters, Inc., its attorney in fact
(by amendment), Plaintiff,**

v.

**KING CRAFT CUSTOM PRODUCTS,
INC., a corporation, et al.,
Defendants.**

Civ. A. No. 72-728.

United States District Court,
N. D. Alabama, S. D.

March 13, 1973.

Gary P. Smith, Najjar, Najjar & Vin-
cent, Birmingham, Ala., Gary W. Wes-
terberg, Lord, Bissell & Brook, Chicago,
Ill., for plaintiff.

Morris K. Sirote, Sirote, Permutt, Friend & Friedman, Stanley D. Bynum, Bradley, Arant, Rose & White, Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION AND ORDER

POINTER, District Judge.

National Insurance Underwriters issued in August 1971, an aviation policy, effective for one year, to King Craft Custom Products, Inc., the owner of a single engine Cessna airplane. In January 1972, the aircraft crashed in an attempt to land under unfavorable weather conditions at the Mobile airport, killing the pilot (William T. King, Jr.) and the two passengers. Following the filing of a wrongful death action by the Executrix of one of the deceased passengers against King Craft and the Estate of the deceased pilot, the instant suit was filed by National to determine its exposure, if any, under the liability portion of the policy. The defendants in the present suit assert that liability coverage is afforded under the policy; and King Craft seeks in counterclaim payment under the property damage (All Risks—Hull) portion of the policy. An extract of pertinent policy provisions is appended hereto, those terms shown in italics having been typewritten and the other quoted provisions having been printed.

By stipulation certain issues were submitted to the court for a decision, non-jury, based upon various documentary evidence, stipulations of counsel, and a deposition of National's underwriter. The court concludes that the non-jury issues are determinative of the outcome of the litigation, dispensing with any trial on the issues which had been reserved if necessary for a jury.

National's denial of coverage under both the liability and property damage parts of the policy is premised upon its contention that the pilot, King, was not properly rated for the flight and did not have as many as 550 total flying hours. Such requirements arise by virtue of the provisions of Item 7 in the Declarations contained in the policy, entitled "Pilots."

■ The defendants first assert that the format of Item 7 renders it unintelligible or, at least, ambiguous. The court, however, concludes that, although somewhat awkward in arrangement, Item 7 has a clear meaning, which can be stated as follows:

"This policy applies when the aircraft is in flight only while being operated—

(1) by William T. King, Jr., while holding an FAA pilot certificate at least equal to the Private type and while properly rated for the flight and aircraft, and when having not less than 550 total pilot flying hours and 300 pilot flying hours in the same make/model as the insured aircraft and dual checkout in the model of the aircraft insured; or

(2) by any pilot employed by a Fixed Base Operator, while holding an FAA pilot certificate at least equal to the Commercial or Airline Transport type and while properly rated for the flight and aircraft, and when having not less than 1,000 total pilot flying hours and 2 pilot flying hours in the same make/model as the insured aircraft and dual checkout in the model of the aircraft insured."

The typewritten insertion of not merely the pilot's name, but also (opposite his name) the items "Private," "550," and "300," precludes the construction adopted in Fireman's Fund Insurance Co. v. McDaniel, 289 F.2d 926 (5th Cir. 1961).

■ National acknowledges that King at the time of the accident held a current "private" FAA certificate and was properly rated for this Cessna by reason of his rating thereon, "Airplane Single Engine Land." It asserts, however, that King was not properly rated "for the flight" inasmuch as, although not possessing an "instrument rating" from the FAA, he encountered bad weather at

Mobile, had obtained clearance for landing "IFR" (Instrument Flying Rules), and was apparently attempting to land by instruments when the accident occurred.

This contention to avoid coverage must be rejected. King was attempting to end a flight which had been undertaken under VFR (Visual Flight Rules) from Panama City to Mobile. At the time of departure from Miami (the total trip was to be in two legs, stopping for a few minutes at the intermediate destination of Panama City), King had been told by FAA authorities that visual weather conditions prevailed in Mobile; and this same information had been repeated several times during the trip to Panama City. His landing and subsequent take-off at Panama City were under VFR conditions; and, so far as is known, such conditions prevailed throughout the entire route of the final leg to Mobile at the time he began such flight. He filed no flight plan, which would have been a requirement under FAA regulations for a flight under instrument flying rules.

King was apparently flying VFR as he approached Mobile; at least, he replied "negative" when asked by the Mobile tower a few minutes before the crash whether he was "IFR." He was told by the Mobile tower that the prevailing conditions for Mobile were a 500 foot ceiling overcast and visibility of seven miles. He then requested an instrument clearance into the airport and was granted the same. Presumably he was attempting to land by use of instruments at the time of the crash, a few minutes later.

King was properly rated "for the flight," a VFR flight from Panama City to Mobile. At most he violated FAA regulations by attempting to conduct landing operations under conditions which required an instrument rating, which he did not have. The policy issued by National defined "in flight" as meaning "the period from the time the aircraft moves forward in taking off . . ., while in the air, and until the aircraft completes its landing and landing run after contact with land." Yet here, to evade coverage, and without even any persuasive support from the FAA regulations, National would have this court break a flight into segments and treat the abortive attempt to land under unfavorable emerging weather conditions as a "flight" requiring (for coverage) an instrument rating. I assume, without deciding, that the weather conditions at Mobile precluded a VFR landing. Actually, the regulations prohibit VFR landing—as such, only when the ground visibility is 3 miles or less—while such visibility in the present case was 7 miles. The regular operational requirements for VFR flight are contained in a table, which if applicable to landings as well, would (for elevations under 1200 feet in the controlled zone) require a minimum distance below the clouds of 500 feet—thus in effect prohibiting without special clearance a landing unless the bottom of the clouds was at least 1700 feet above the field.* It very well may be that such a construction is not intended—that the table is not applicable to landings. See FAA Regs. § 91.105.

Apparently recognizing the harshness of its contention, National offers to prove (a matter which by the stipulation would be left for the jury) that King voluntarily and knowingly attempted to land under such conditions when he had other choices open. This effort would be to avoid the extremity of suspending coverage when a pilot had no other options by reason of emerging weather conditions. This would be to suggest that the court should construe the clause in question as if it read "while properly rated for the flight, unless for circumstances beyond his control," or the like,

---

* Indeed, for an aircraft flying at 10,000 feet elevation, the table might prevent a landing unless the bottom of the clouds were at least 10,500 feet above the surface.

which certainly is not the language of this policy.

As the defendants argue, the adoption of National's contention could result in coverage during a particular flight flickering on and off as particular weather conditions were encountered. Such an interpretation should be avoided except where dictated by the clearest of terms. That is not the case here.

Nor can National be heard to complain too loudly as to this interpretation. In other policies which it issues, and was issuing back in August 1971, National had employed as an additional clause of exclusion words such as "[this policy does not apply] under Instrument Flight Rules (IFR) conditions . unless the pilot possesses a valid Instrument Rating . . .," and defining IFR by adoption of the applicable government regulations. Such language was used in addition to the language here being urged as accomplishing the same result. In short, National knows how to state such an exclusion, but it did not choose to do so here.

■ National next asserts that coverage should be held suspended on account of King's not having had, at the time of the accident, 550 total flying hours. (For purposes of the non-jury submission, it is assumed that he had only 484.-3 hours.) Support for National's position can certainly be found from a reading of the "exclusion" language of the liability and property damage portions of the policy and from a reading of Item 7 of the Declarations.

However, on reading the entire policy, including the application, a different interpretation arises—an interpretation that, rather than being words of coverage, the pilot hours shown for King in the Declarations constitute representations or warranties. The policy begins with the statement of an agreement between National and King Craft that the policy is issued "in reliance upon the statements contained in the Declarations and application." Then in condition 19 of the policy there is an agreement that "the statements in the application and Declarations are [King Craft's] agreements and representations" and that "this policy is issued in reliance upon the truth of such representations." There is also the condition that "this policy shall be void if [King Craft] has concealed or misrepresented any *material* fact or circumstance concerning this insurance." (Emphasis added.)

What is it in the application and Declarations that can be taken as representations by King Craft? At the very least it is the typewritten portion that names the (normal) pilot, his certificate, and flying hours.

■ These representations are, as to this non-jury submission, to be assumed to be false insofar as the total flying hours are concerned. Does this misrepresentation void the policy? Only under Alabama law if the matter misrepresented increases the risk of loss or was made with actual intent to deceive. Alabama Code, title 28 § 6. The policy conditions which would void the policy misrepresentation likewise are limited to "material" facts.

■ In this case the flying hours of the named pilot were, without any real dispute, immaterial to National's acceptance of the risk. Their underwriter candidly has admitted that National would have issued the policy with no increase in premium had King been shown as having less than the 550 hours. Whatever had been shown in the application as to King's hours would have been acceptable to National for insurance at the same rate, and those hours would have been typed into the Declarations rather than the 550. National's only complaint is that the application showed a greater number of flying hours than he actually had. In short,

National is arguing that the misrepresentation is material because it is misrepresented. The argument is without merit.

The speciousness of National's position is demonstrated by its own past practice. On August 9, 1969, it issued a policy to King Craft, with the application and Declarations showing King as a named pilot with only a student pilot's certificate and a total of 40 pilot flying hours. On May 13, 1970, it issued a policy to King Craft on the very plane involved in this case, showing King as a named pilot with only 220 total flying hours. On July 17, 1970, it issued a temporary binder to King Craft on the same plane, showing King as the named pilot with only 275 total flying hours. On August 9, 1970, the temporary binder was replaced by a one year policy, showing King in the Declarations as having 275 hours. Each of these policies had the same premium charge for liability coverage as the one in question here.

The result is that any misrepresentation as to total flying hours of the named pilot, King, was a matter of absolutely no importance in the issuance of the policy and cannot be the source for National's avoiding its obligations under that policy. It may be noted that the matters typed into the Declarations are taken from like entries on the application form. Yet there is nothing in the application form for the policy in question here that even suggests that King's flying hours would become a matter of coverage. There is language that the entries on the application form are represented to be true—this merely reinforces the conclusion that the flying hours at most would be a warranty (and not a matter of coverage), but does not make material that which National has clearly indicated is immaterial. National has never contended that the misrepresentation as to King's flying hours was made with actual intent to deceive.

This case bears a striking similarity to Ranger Insurance Co. v. Culberson, 454 F.2d 857 (5th Cir. 1971). As with the Court of Appeals, "in a sense broader than the . . . clauses we have discussed above, we feel that [National] contracted for precisely the matrix of risks that eventually came to fruition."

There is reserved for further decision the questions as to the amount of National's liability under the counterclaim for property damage and for attorney's fees and expenses incurred by King Craft and King's Estate in defending the wrongful death action. Such matters, by agreement of counsel for all parties are to be determined by the court without a jury if the parties cannot reach an agreement with respect thereto.

It is hereby declared that National is bound under its contract to afford to King Craft and King's Estate the protection granted under Part I of its policy and to pay to King Craft the amount to which it may be entitled under Part III of the policy. All further issues are reserved for decision by the court. Costs are to be taxed against National.

## APPENDIX

[National Insurance Underwriters] does hereby agree with [King Craft Custom Products, Inc.] * * * in reliance upon the statements contained in the Declarations and application * * * :

### Part I—Aircraft Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of * * * bodily injury * * *, including death at any time resulting therefrom, sustained by any person * * * caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft, and [National Insurance Underwriters] shall defend

any suit alleging such  \*  \*  \*  death  \*  \*  \*  and seeking damages on account thereof, even if the suit is groundless  \*  \*  \*.

The unqualified word "Insured" whenever used in Part I of this policy includes not only [King Craft Custom Products, Inc.] but also any person while using  \*  \*  \*  the aircraft  \*  \*  \*,  provided the actual use is with the permission of [King Craft Custom Products, Inc.].

Exclusions.  This policy does not apply under Part I  \*  \*  \* while the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 7.  "Pilots" of the Declarations.

### Part III—All Risks—Hull

To pay  \*  \*  \*  any physical loss of or damage to the aircraft  \*  \*  \*.

Exclusions.  This policy does not apply under Part III  \*  \*  \* while the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specifed in Item 7.  "Pilots" of the Declarations.

CONDITIONS.  \*  \*  \*  17.  This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance  \*  \*  \*  or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance  \*  \*  \*.  19.  By acceptance of this policy the Insured  \*  \*  \*  agrees that the statements in the application and Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and [National Insurance Underwriters] or any of its representatives relating to this insurance.

---

### DECLARATIONS

Item 7.   Pilots:  This policy applies when the aircraft is in flight:

| (a) only while being operated by the pilot(s) named or designated below, | (b) while holding an FAA pilot certificate at least equal to the type described below and while properly rated for the flight and aircraft, | (c) and when having not less than the minimums stated below and dual checkout in model of aircraft insured. | |
|---|---|---|---|
| | | total pilot flying hrs. | Pilot flying hrs—same make/model as insured aircraft |
| *William T. King, Jr.* | *Private* | *550* | *300* |
| and any pilot employed by a Fixed Base Operator | Commercial or Airline Transport | 1,000 | 2 |