**JIM HAWK CHEVROLET–BUICK, INC., Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

**No. 60582.**

Supreme Court of Iowa.

Oct. 18, 1978.

Rehearing Denied Nov. 17, 1978.

Smith, Peterson, Beckman & Willson by Frank W. Pechacek, Jr., Council Bluffs, for appellant.

Perkins, Sacks & Hannan, Council Bluffs, for appellee.

UHLENHOPP, Justice.

Plaintiff Jim Hawk Chevrolet-Buick, Inc. (the corporation), of which Jim Hawk was an officer, owned an airplane. The corporation applied to defendant Insurance Company of North America (INA) for a property damage policy on the plane, stating that only Hawk would pilot the plane and that he had only 46 hours flying experience. Hawk held a student pilot's license from the Federal Aviation Administration and could solo, but he did not hold a rating for instrument flights.

On September 13, 1973, INA's agent in West Des Moines, Iowa, issued a policy. The policy was not delivered until sometime after the crash which is involved in the lawsuit, and was not seen by personnel of the corporation until then. The policy contained endorsements including form E–131c entitled "PILOT ENDORSEMENT", which states in part:

[Printed:] It is agreed that coverage provided by the policy shall not apply while the aircraft is in flight unless the pilot in command of the aircraft maintains a valid pilot's certificate with ratings and certificates appropriate for the flight and the aircraft as required by the Federal Aviation Administration (and its foreign equivalent, if applicable) and is either a person named below or a person meeting the qualifications set forth below. If no such qualifications are listed, only the person or persons named may act as pilot in command.

[Typewritten:] Jim Hawk

[Typewritten:] or any other properly licensed pilot with a minimum of 1000 first pilot hours of which not less than 5 hours have been logged within the last 90 days in aircraft of similar make and model as the aircraft insured.

[Then follow two printed paragraphs not material here.]

After issuance of the policy, the plane was damaged in a crash, and Hawk was killed, under the following circumstances as found by the trial court on substantial evidence:

On September 28, 1973, at approximately 2:40 o'clock A.M., the plaintiff's 1959 Piper Comanche Aircraft, piloted by James V. Hawk, II, crashed in a cornfield approximately one-half mile from the Council Bluffs Airport, in Council Bluffs, Pottawattamie County, Iowa. The pilot of said aircraft, James V. Hawk, II, had attained only a student license. Said pilot was not qualified for VFR Flight, and at the time of operation and the crash referred to herein weather conditions were such that the sky was overcast, there was a 600 foot ceiling, it was dark at night, foggy and rainy . . . . An examination of the aircraft disclosed no evidence of in-flight malfunction of the aircraft or of any of its associated components . . . . .

The Federal Aviation Agency Regulations, which applied to this aircraft and this flight, require a pilot with VFR qualifications for the weather and night conditions, then and there existing. The pilot of the aircraft was not qualified for VFR Flight.

(In these findings the trial court inadvertently used "VFR Flight" when the correct initials are "IFR Flight"—an instrument flight. Counsel agree on this point.)

The corporation sued INA for loss resulting from property damage to the plane. The trial court found for the corporation, and INA appealed.

■ I. Only one fact need be considered concerning Hawk's operation of the plane at the time of the crash: Hawk did not hold an instrument flight rating.

The pilot endorsement plainly states that the insurance shall not apply unless the following conditions are met: (1) the pilot holds a valid pilot's certificate "with ratings and certificates appropriate for the flight and the aircraft" and (2) the pilot is a person named, or possesses the qualifications stated, in the endorsement.

Hawk met the second condition; he was the person named in the endorsement. He also met the first part of the first condition; he had a valid student pilot certificate. But he did not meet the second part of the first condition: his student pilot certificate was not rated for instrument flights and the evidence showed as the court found that this was an instrument flight.

Under this endorsement, when Hawk flew the plane within his ratings the plane was insured, and when he flew the plane beyond his ratings the plane was not insured. On this occasion he flew the plane beyond his ratings and the insurance did not apply. *Bequette v. National Ins. Underwriters, Inc.*, 429 F.2d 896 (9 Cir.); *National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362; *Atlanta Air Fleet, Inc. v. Insurance Co. of N.A.*, 130 Ga.App. 15, 202 S.E.2d 192; *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883 (Mo.App.).

■ II. The corporation claims however that it was unaware of the pilot endorsement and is not bound thereby. Nothing indicates suspicious conduct on the part of INA's agent in attaching the endorsement upon issuing the policy prior to the crash. The endorsement was not contrived for attachment to the particular policy issued to this corporation as is shown by the cases we have cited: *Bequette, Carter, Atlanta,* and *Macalco, supra.* The policy is a contract of adhesion. It is nonetheless a valid contract, *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315, 325, 122 Cal.Rptr. 816, 822, and the corporation cannot pick and choose the clauses of the policy it will take advantage of and the ones it will nullify, unless the challenged clause falls within the doctrine of *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169 (Iowa).

The endorsement does not fall within *C & J Fertilizer.* There the insurer issued a BROAD FORM STOREKEEPERS POLICY and a MERCANTILE BURGLARY AND ROBBERY POLICY, and this court refused to enforce a definition of burglary within the policies which required visible marks of force or violence on the exterior at the place of entry. The clause did not relate to conduct on the insured's part which increased the risk of burglary. Here we have an insurer writing property damage insurance on an airplane. We think such an insurer does not act unreasonably if it limits its undertaking to flights within the pilot's ratings and requires its insured to expect that flights must be within the pilot's ratings for the insurance to apply. This clause pertains to increasing the hazard by flying beyond ratings.

Because we do not believe the endorsement infringed the objectively reasonable expectation of plaintiff corporation, we hold that it is enforceable.

We hold that the insurance did not apply at the time of the crash.

REVERSED.

All Justices concur except REYNOLDSON, C. J., and HARRIS and McGIVERIN, JJ., who dissent.

HARRIS, Justice (dissenting).

I respectfully dissent. No one claims the policy or any of its provisions were made known to the pilot, much less the insured, prior to the crash. The policy was not delivered until after the crash. In addition, there is no evidence that the provision upon which the insurer and the majority rely for suspending coverage and denying the insured's claim was discussed with Hawk, or the insured prior to the crash. The majority's holding, in the face of these facts, strikes me as diametrically contrary to our holding in *C & J Fert., Inc. v. Allied Mut. Ins. Co.,* 227 N.W.2d 169 (Iowa 1975).

The majority points out that ". . . [n]othing indicates suspicious conduct on the part of INA's agent in attaching the endorsement upon issuing the policy prior to the crash. . . ." But this is not the issue. The issue under *C & J Fert.* is what sort of protection the insured reasonably believed it purchased.

Prior to the crash the insured was informed by INA that its plane was covered by an as yet undelivered insurance policy. The issuance of this policy was in response to the insured's application for insurance, in which Jim Hawk was certified as the sole pilot for the aircraft. Informing the insured, prior to the crash, that it was insured, without giving any notice of the suspension provision of the policy, induced an unqualified, yet reasonable belief by the insured that it was covered for the crash in the present case.

Since our opinion in *C & J Fert.* we have taken a practical view of the protection bargained for and sold in the issuance of an insurance policy. See for example *Gibson v. Milwaukee Mut. Ins. Co.,* 265 N.W.2d 742, 745 (Iowa 1978) where we held ". . . an insured is afforded protection to the extent he can reasonably expect the terms of the policy to mean. . . ."

It is disappointing that the majority, after conceding the policy is a contract of adhesion, still finds the purchaser can be subjected, without notice and explanation, to all of the pitfalls of exclusions and exceptions of contract whenever they are inserted into a policy. It is especially inappropriate to renounce *C & J Fert.* or to limit its effect in this case. The majority attempts to distinguish *C & J Fert.* by stating the exclusion clause here, unlike the one in *C & J Fert.,* is related to the *insured's* conduct and the consequent risk. Again this is not the question. Under *C & J Fert.* the issue here is not how or whether to regulate either the insured's or the pilot's conduct. The issue is whether the insured corporation had a reasonable expectation of insurance.

I would affirm.

REYNOLDSON, C. J., and McGIVERIN, J., join in this dissent.