NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, *Respondent,* v. RUSSELL ZUVER,
*as Personal Representative,*
ET AL, *Appellants.*

*Gary W. East, David A. Garton,* and *East & Helenius,*
for appellants.

*William R. Hickman, Heather Houston Reeve,* and *Reed, McClure, Moceri, Thonn & Moriarty,* for respondent.

REVELLE, J.*—Phillip E. Strathy took off in a private plane from Martha Lake Airport at 11:20 a.m. on June 19, 1983. His passengers included his three daughters and a friend, Thomas Zuver. They were headed over the Cascade Mountains for Roosevelt Lake in Eastern Washington. Approximately one–half hour after leaving Martha Lake the plane crashed into Glacier Peak killing all aboard.

Strathy's insurer, National Union Fire Insurance Company, brought a declaratory judgment action to determine coverage under its aviation liability insurance policy. In question are certain provisions of the policy.

First, the policy's exclusionary language states:

Exclusions
This policy does not apply:

. . .

2. To any insured while the aircraft is in flight
   (a) if piloted by other than the pilot or pilots designated in the Declarations;
   (b) if piloted by a pilot not properly certified, qualified, and rated under the applicable federal air regulations FAR *for the operation involved,* whether or not said pilot is designated in the Declarations;

. . .

(Italics ours.)

Second, its pilot warranty provides in pertinent part:

1. Insurance will be effective only when the operation of the insured aircraft in motion is by a pilot designated below who possess [*sic*] a current and valid pilot certificate of the kind specified with *appropriate ratings,* and a current medical certificate; all as required by the Federal Aviation Administration *for the flight involved* and who meets the additional qualifications set forth below.

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

(Italics ours.) The pilot warranty endorsement goes on to state:

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated.

Strathy was rated for and was required to follow visual flight rules (VFR) under FAA regulations and not under instrument flight rules (IFR). Under his rating he was required to adhere to certain FAA visibility standards.[1] After a 5–day trial the trial court concluded Strathy had violated FAA regulations for visual flight for at least 1 mile prior to impact with Glacier Peak and was thereby excluded from coverage under this exclusion.

Before leaving Martha Lake, Strathy phoned for a weather briefing. Strathy requested weather data for pilots

---

[1]The minimum visibility requirements for pilots with a visual flight rating are set forth in 14 C.F.R. § 91.105(a) (1984), which provides:

Except as provided in § 91.107, no person may operate an aircraft under VFR when the flight visibility is less, or at a distance from clouds that is less, than that prescribed for the corresponding altitude in the following table:

| Altitude | Flight Visibility | Distance From Clouds |
|---|---|---|
| 1,200 feet or less above the surface (regardless of MSL altitude)— | | |
| Within controlled airspace | 3 statute miles | 500 feet below 1,000 feet above 2,000 feet horizontal |
| Outside controlled airspace | 1 statute mile except as provided in § 91.105(b) | Clear of clouds |
| More than 1,200 feet above the surface but less than 10,000 feet MSL— | | |
| Within controlled airspace | 3 statute miles | 500 feet below 1,000 feet above 2,000 feet horizontal |
| Outside controlled airspace | 1 statute mile | 500 feet below 1,000 feet above 2,000 feet horizontal |
| More than 1,200 feet above the surface and at or above 10,000 feet MSL | 5 statute miles | 1,000 feet below 1,000 feet above 1 mile horizontal |

using VFR. The weather service reported he could fly to his destination under VFR conditions but made a flight precaution for "mountains occasionally obscured." Strathy inquired as to the "tops over the mountains", meaning the tops of clouds. He was told the tops were in a range from 8,000 to 11,000 feet.

Appellant contends the trial court erred in concluding the exclusions paragraph is not ambiguous and that it applies not only to the conditions at the inception of the flight, but also to the specific action(s) of Strathy in his direct and purposeful flight into the clouds, an operation for which he was not rated. Cleared of unnecessary language the exclusion says the

> policy does not apply . . . to any insured while the aircraft is in flight . . . if piloted by a pilot not properly certificated, qualified and rated . . . for the operation involved. . . .

Insurance policies are to be construed as contracts. The interpretation of them is a matter of law. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984); *Ryan v. Harrison,* 40 Wn. App. 395, 699 P.2d 230, *review denied,* 104 Wn.2d 1003 (1985). The court examines the contract as a whole, and if on its face two reasonable and fair interpretations are possible, an ambiguity exists. *State Farm Gen. Ins. Co. v. Emerson, supra* at 484.

The meaning of the exclusionary provision can be determined only from viewing the policy as a whole, not in terms of isolated segments read alone. Therefore, the exclusionary clause must be harmonized with the coverage clause. *Farmers Ins. Co. v. Clure,* 41 Wn. App. 212, 702 P.2d 1247 (1985). However, in Washington an exclusionary clause is strictly construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 659 P.2d 509 (1983), *modified,* 101 Wn.2d 830, 683 P.2d 186 (1984). This rule, however, is not to be applied when the language of the exclusions is clear and unambiguous. *Farmers Ins. Group v. Johnson,* 43 Wn. App. 39, 715 P.2d 144 (1986); *Britton v.*

*Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985).

The first question to be answered is whether the exclusions clause is ambiguous.

First, we consider the meaning of "while the aircraft is in flight." "In flight" is defined in the policy as:

> In flight means the time commencing with the actual take–off run of the aircraft and continuing thereafter until it has completed its landing roll . . .

Second, appellant would then have us construe the terms "operation involved" to mean the same as "flight" or "in flight". That, however, would be redundant as it had been previously stated in the exclusions paragraph that coverage would not apply to any insured while the aircraft is in flight if exclusion conditions occurred. Because the policy contains certain conditions in the exclusions section, the trial court correctly believed a plain reading of these exclusions showed an intent for the words "operation involved", which is not defined in the policy, to mean something other than "flight" or "in flight". The interpretation of a term of broad and general meaning depends upon the circumstances and context in which it is used. *Farmers Home Mut. Ins. Co. v. Ins. Co. of North Am.,* 20 Wn. App. 815, 583 P.2d 644 (1978), *cert. denied,* 442 U.S. 942, 61 L. Ed. 2d 312, 99 S. Ct. 2885 (1979).

The definition of "operation" is as follows:

> Operation. Exertion of power; the process of operating or mode of action; an effect brought about in accordance with a definite plan; action; activity. . . .

Black's Law Dictionary 984 (5th ed. 1979). A conclusion that the "operation involved" is the process of operating (or "driving") the aircraft is consonant with the common definition. The use of "operation involved" to mean the "driving" of the plane rather than to merely reiterate "while in flight" in the clause, impels the conclusion that the author of the paragraph meant a difference.

There was substantial evidence that Strathy purposely flew into the clouds at 10,000 feet without correcting his flight to avoid clouds. He was operating under IFR condi-

tions in violation of his VFR rating. This flight at its inception was a VFR flight for which Strathy was rated. The question is whether his conduct during the flight was sufficient to make the operation involved fall within the exclusions of the policy.

> Though an insurance policy is intended to cover even the pilot's own acts of negligence, all insurance policies have conditions and limits on coverage. A pilot's failure to realize that his policy excludes coverage in a given situation does not prevent the exclusion from operating, whether or not the failure to realize it was negligent.

*United States Fire Ins. Co. v. Marr's Short Stop of Tex., Inc.,* 680 S.W.2d 3, 7 (Tex. 1984). Substantial evidence supports, and no error is assigned to, the finding of fact establishing that Strathy purposefully flew by instruments (IFR) into the clouds and the mountain, even though there was no direct evidence of the reason for the impact. Findings of fact to which no error is assigned are accepted as verities on appeal. *Luxon v. Caviezel,* 42 Wn. App. 261, 710 P.2d 809 (1985).

Three cases are cited to support appellants' argument that the flight must be characterized at its inception and thereafter remain unchanged by subsequent flight conditions.

The cases cited are: *National Ins. Underwriters v. King Craft Custom Prods., Inc.,* 368 F. Supp. 476 (N.D. Ala. 1973), *aff'd,* 488 F.2d 1393 (5th Cir. 1974); *Glover v. National Ins. Underwriters,* 545 S.W.2d 755 (Tex. 1977); *United States Fire Ins. Co. v. Marr's Short Stop of Tex., Inc.,* 680 S.W.2d 3 (Tex. 1984). The language in the liability policies of these cases is different than the policy before this court. All three cases have wording about the pilot rating "for the flight" as opposed to "for the operation involved" as used in Strathy's policy. Therefore the cases cited by appellant do not apply to the policy at issue as the language interpreted by those courts had a different meaning.

Next appellants urge that the pilot warranty endorse-

ment is in direct conflict with paragraph 2(b) of the exclusions, thus rendering the exclusion ambiguous. Appellants argue there is a different use of the word "operation" in the endorsement than in the exclusions. Also, the term "flight involved" is used rather than "operation involved". They further contend the use of "flight involved" in the endorsement is a declaration that the insurance policy will be effective for the "flight involved". To the contrary, exclusion 2(b) expressly applies to limit coverage "whether or not said pilot is designated in the declarations". Hence, under its own terms, the pilot warranty endorsement does not apply to exclusion 2(b). National's contention that the limited purpose of the pilot warranty endorsement defines who is, and who is not, covered under the policy is correct.

█ Washington case law dictates that endorsements be construed into, and harmonized with, the main policy if at all possible.

> As a general rule, a lawful slip or rider which is properly attached to a policy and referred to therein is a part of the contract and should be construed in connection with the other provisions of the policy, and the entire contract should be harmonized therewith if possible. Notwithstanding the attaching of a rider, provisions in the body of the policy are still parts of the contract and are not superseded, waived, limited, or modified by the provisions of the rider, except to the extent that it is expressly stated in the rider that the provisions thereof are substituted for those appearing in the body of the policy, or that the provisions of the rider have the effect of creating a new and different contract from that of the original policy; and except where the provisions in the policy proper and those in the rider are in conflict, in which case the latter control in construing the contract, especially where the provisions of the rider are the more specific.

*Holthe v. Iskowitz*, 31 Wn.2d 533, 541–42, 197 P.2d 999 (1948) (quoting 44 C.J.S. *Insurance* § 300, at 1206). *See also Employers Mut. Liab. Ins. Co. v. Pacific Inland Nav. Co.*, 358 F.2d 718 (9th Cir. 1966).

If the endorsement is reconcilable with the policy, both

will stand. Here, the pilot warranty does nothing to change or override paragraph 2(b) of the exclusions. Appellants would like the endorsement to control, because the "in flight" language is contained therein. Some courts have held the term "in flight" to be ambiguous. We disagree.

The reasoning urged by appellants has been rejected. In *Jim Hawk Chevrolet–Buick, Inc. v. Ins. Co. of North Am.,* 270 N.W.2d 466 (Iowa 1978), the policy contained an endorsement which used "in flight" language found ambiguous by the Texas courts. The evidence at trial revealed that Hawk, a visual flight rated student pilot, had crashed in a cornfield under instrument weather conditions. The court stated that Hawk was not rated for a flight in the weather conditions prevalent at the time of the crash. It stated:

> The pilot endorsement plainly states that the insurance shall not apply unless the following conditions are met: (1) the pilot holds a valid pilot's certificate "with ratings and certificates appropriate for the flight and the aircraft" . . .
>
> . . .
> Under this endorsement, when Hawk flew the plane within his ratings the plane was insured, and when he flew the plane beyond his ratings the plane was not insured. On this occasion he flew the plane beyond his ratings and the insurance did not apply.

*Jim Hawk,* at 468. *See also Bequette v. National Ins. Underwriters, Inc.,* 429 F.2d 896 (9th Cir. 1970).

In writing and structuring the instant policy, National Union made clear that the pilot must be rated under the FAA regulations for the operation in which he was involved at the time of the accident. This rule mandates no unreasonable inquiry, as appellants claim, but focuses in on a limited time frame. Nor is the frequent lack of direct evidence in plane crashes a just cause for rewriting the clear terms of the policy. Circumstantial evidence is probative and is reliable evidence from which valid conclusions may be drawn. *Grady v. Dashiell,* 24 Wn.2d 272, 163 P.2d 922 (1945); *State Farm Mut. Ins. Co. v. Padilla,* 14 Wn. App.

337, 339–40, 540 P.2d 1395 (1975).

This National Union policy may not now be rewritten as urged by appellants. "Where the language of the policy limitation is clear, the court will give effect to that language unless it is contrary to public policy." *Schab v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 418, 421, 704 P.2d 621 (1985) (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984)). National Union explicitly refused to assume those risks occurring as a result of Strathy's *intentional* operation of the plane in conditions for which he was not rated. Any other construction of the policy would ignore its purpose and the clear intent of the parties in contracting for insurance of specific risks. As the Washington Supreme Court stated in *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 44, 491 P.2d 641 (1971):

> The rule that contracts of insurance are construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous, and then construing it in favor of the insured. A court may not modify clear and unambiguous language in an insurance policy, or revise the insurance contract under the theory of construing it.

(Citations omitted.) The trial court is affirmed.

CALLOW, J. Pro Tem., concurs.

RILEY, J.* (dissenting)—I concur with the majority's view that the contractual term "operation" must have a different meaning than the term "flight" as used in the insurance contract in question.

However, in the context of the special risk insurance contract involved in this proceeding, I am confident that the intended meaning of the phrase "for the operation involved" had to mean more than merely operating or "driving" the aircraft as defined by the court's opinion. I believe that phrase should be construed to include (1) a "flight" (2) under particular procedures (in this case visual flight rules (VFR) as defined by Federal Aviation Adminis-

tration regulations) (3) from one point to another (4) for particular purposes (passengers, etc.), and (5) in a particular type of aircraft (single engine land, reciprocating engine, etc.).

It is undisputed that Strathy was licensed and certified to fly passengers under visual flight rules in the type of aircraft involved in this tragedy and thus that coverage was in effect when the "operation" commenced. Further it appears to be undisputed that *after* takeoff Strathy encountered, either deliberately or negligently, instrument flight conditions for which he was not licensed, and that as a result the aircraft crashed into the mountains which were obscured by clouds.

Regardless of whether Strathy's own negligence or his deliberate disregard for available alternatives after takeoff led him into the clouds, should the liability coverage of the policy which was in effect at the time of takeoff, as to a VFR flight operation, be turned on and off as the pilot errs or as changes in *his* intentions dictate? Recognizing that different jurisdictions have reached opposing results I nonetheless favor, on public policy grounds, the result and reasoning of *National Ins. Underwriters v. King Craft Custom Prods., Inc.,* 368 F. Supp. 476 (N.D. Ala. 1973), *aff'd,* 488 F.2d 1393 (5th Cir. 1974); *Glover v. National Ins. Underwriters,* 545 S.W.2d 755 (Tex. 1977); and *United States Fire Ins. Co. v. Marr's Short Stop of Tex., Inc.,* 680 S.W.2d 3 (Tex. 1984).

I would hold appellants are entitled to coverage as a matter of law. I therefore dissent.

Review granted by Supreme Court July 1, 1987.