[No. 7724–1–III. Division Three. July 23, 1987.]

JEAN SPERRY, ET AL, *Respondents,* v. DOUG MAKI, ET AL, *Defendants,* ROCKY MOUNTAIN FIRE AND CASUALTY COMPANY, INC., *Appellant.*

*Neil S. Gladson,* for appellant.

*Ronald L. Skala, Mark A. Kunkler,* and *Weeks, Dietzen & Skala,* for respondents.

MUNSON, J.—Rocky Mountain Fire and Casualty Company appeals a summary judgment in favor of its insureds, Jean and Donald Sperry. The Superior Court held coverage existed under the underinsured motorist provision of the Sperrys' policy for damages sustained by them when they collided with a Cessna 150 aircraft which was in the process of making an emergency landing on a public highway. We reverse.

The Sperrys brought this negligence action for damages against the pilot, Doug Maki, airplane owners Reynolds and Tri-City Auto Center, and Rocky Mountain. The complaint alleged the aircraft was a motor vehicle for purposes of underinsured motorist coverage. Both the Sperrys and Rocky Mountain moved for summary judgment on the issue of coverage. The Superior Court granted the Sperry's motion, reasoning in its oral opinion: "[O]nce an airplane is used on our public highways whether in landing, taking off, taxiing or crossing a roadway . . . it becomes a motor vehicle for the purposes of our Uninsured Motorist Act . . ." From that determination, Rocky Mountain appeals.

RCW 48.22.030 provides:

(1) *"Underinsured motor vehicle" means a motor vehicle* with respect to . . . which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability . . . is less than the applicable damages which the covered person is legally entitled to recover.

(Italics ours.) At oral argument, counsel for Rocky Mountain stipulated the definition of "underinsured motor vehicle" contained in the Sperrys' policy was the same as the statutory definition contained in RCW 48.22.030(1). Consequently, our analysis focuses on the legal question of

whether an aircraft falls within the definition of "underinsured motor vehicle" as that term is used in RCW 48.22-.030(1).

Neither RCW Title 48, "Insurance", nor chapter 48.22 in particular contains a further definition of the term "motor vehicle." RCW Title 46 relates to "motor vehicles." RCW 46.04.320 defines "motor vehicle" as

> every vehicle which is self–propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.

RCW 46.04.670 further defines "vehicle" as including

> every device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, excepting devices moved by human or animal power or used exclusively upon stationary rails or tracks, except that mopeds shall be considered vehicles or motor vehicles for the purposes of chapter 46.12 RCW, but not for the purposes of chapter 46.70 RCW.

*See also* RCW 47.04.010(18), (40).

 In construing a term in a statute, our duty is to give expression to the Legislature's intent. *See Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 5, 665 P.2d 891 (1983). In determining that intent, the meaning of a particular word or term is derived by how it is commonly, popularly, or ordinarily used. *Certain British Underwriters at Lloyd's v. Jet Charter Serv., Inc.,* 789 F.2d 1534, 1536 (11th Cir. 1986); *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 670, 689 P.2d 68 (1984). The interpretation of a term of broad and general meaning depends upon the circumstances and context in which that term is used. *National Union Fire Ins. Co. v. Zuver,* 47 Wn. App. 540, 544, 736 P.2d 675 (1987). Although this court is required to construe an ambiguous term in an insurance policy in favor of the insured, we are not permitted to modify the unambiguous meaning of language contained in a policy or statute under the guise of construing it. *See Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 528, 707 P.2d 125 (1985); *Thompson*

*v. Lewis Cy.,* 92 Wn.2d 204, 207, 595 P.2d 541 (1979); *Viking Ins. Co. v. Zinkgraf,* 47 Wn. App. 645, 647, 737 P.2d 268 (1987). Applying these principles to the terms "motor vehicle" or "vehicle," we conclude an aircraft does not fall within either term as they are commonly and ordinarily used.

First, *Webster's Third New Int'l Dictionary* 1476 (1969) defines "motor vehicle" as "an automotive vehicle not operated on rails; *esp*: one with rubber tires for use on highways". This definition confirms the everyday, common-sense understanding that "motor vehicle" applies to a class of vehicles that includes cars, trucks, buses, and the like. This understanding is confirmed by the annotation entitled *Airplane as Within Terms "Vehicles," "Motor Vehicle," Etc.,* 165 A.L.R. 916 (1946) which provides: "Although the result is always contingent on the particular wording involved, it has been almost invariably held, in the construction of statutes and regulations, that airplanes are not within the terms 'vehicles,' 'motor vehicles,' etc."

The Sperrys fare no better with respect to whether an aircraft falls within the more general term "vehicle." Although etymologically the term is broad enough to cover airplanes, "vehicle" is ordinarily understood to mean a machine designed to move solely on the land. As noted over 50 years ago by Justice Holmes in *McBoyle v. United States,* 283 U.S. 25, 26, 75 L. Ed. 816, 51 S. Ct. 340 (1931), "in everyday speech, 'vehicle' calls up the picture of a thing moving on land." *Accord, Certain British Underwriters,* at 1537 (citing authorities); *but cf. McReynolds v. Municipal Court,* 207 N.W.2d 792, 796 (Iowa 1973). When the Legislature enacted its definition of underinsured motor vehicle, it did not intend an airplane to be within the ambit of the term "underinsured motor vehicle." Likewise, an ordinary person who purchases underinsured motorist insurance believes that insurance covers risks arising from a collision with another car, truck, or the like, not with an airplane.

Second, we are not persuaded that an airplane becomes a motor vehicle when used in some fashion upon the highway.

If we were to adopt this reasoning, then the Sperrys would not be able to collect under their policy if the airplane had been attempting to land in a nearby field when it hit their car.

Third, our interpretation is supported by the public policy underlying the underinsured motorist statute. It was enacted to protect drivers so insured from other financially irresponsible motorists, *i.e.*, motorists who carry either no or insufficient automobile liability insurance. *Cf. Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979); *First Nat'l Ins. Co. of Am. v. Perala*, 32 Wn. App. 527, 531–32, 648 P.2d 472, *review denied*, 98 Wn.2d 1002 (1982). A pilot does not fall within either class of persons as he or she is not required to purchase motor vehicle insurance.

Fourth, a contrary holding on our part inevitably leads to troubling implications. Logically, such a holding would require pilots of airplanes to purchase not only motor vehicle liability insurance, but also underinsured motorist coverage. Moreover, pilots and owners of airplanes would necessarily be subject to all of the provisions set out in RCW Title 46 covering motor vehicles, including that title's licensing and financial responsibility provisions.[1]

Finally, we conclude by noting we are sympathetic to the Sperrys' loss. However, we are guided by the realization that "hard cases make bad law." Although the public policy of this state is clearly to compensate injured persons and to construe insurance terms liberally, we also heed the warning of Burrough, J., who, in writing *Richardson v. Mellish*, 2 Bing. 229, 252, 130 Eng. Rep. 294 (1824), stated that public policy "is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law."[2] This court is not permitted,

---

[1]The specific provisions dealing with airplanes and their regulation are found in RCW 47.68 entitled "Aeronautics." Significantly, RCW 47.68.020(2) defines "aircraft" as "any contrivance now known, or hereafter invented, used or designed for navigation of or flight in the air."

[2]Quoted in M. McNamara, *2,000 Famous Legal Quotations* 486 (1967).

in the name of public policy, to define motor vehicle as including an airplane any more than we are permitted to define an apple as including an orange.

The judgment is reversed.

GREEN, J., concurs.

McINTURFF, C.J. (dissenting)—I respectfully dissent because the majority's holding subverts the public policy underlying Washington's underinsured motorist act. That policy is summarized in *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979):

> RCW 48.22.030 is to be liberally construed in order to provide broad protection against financially irresponsible motorists. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). The purpose of the statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance. *Touchette v. Northwestern Mut. Ins. Co., supra.*

To adopt the insurer's argument that "motor vehicle" includes only those vehicles designed primarily for use on a highway defeats this well founded and essential public policy of providing broad protection against financially irresponsible motorists.[3] No doubt the average person acquiring automobile insurance believes he/she is insured for everything not specifically excepted in the statute that *can* happen on the highway. The innocent motorist who has paid for underinsured motorist coverage has a legitimate expectation that he will be protected financially should he collide with an uninsured or underinsured motor vehicle while using the road.

---

[3]The insurer and the majority cite to Annot., *Airplane as Within Terms "Vehicle," "Motor Vehicle," Etc.*, 165 A.L.R. 916 (1946) and numerous cases, including *Certain British Underwriters at Lloyd's v. Jet Charter Serv., Inc.*, 789 F.2d 1534, 1537 (11th Cir. 1986), which state that although the result is always contingent upon the particular wording involved, it has been almost invariably held that airplanes are not within the terms "vehicles" or "motor vehicles". However, *none* of these cases involve an interpretation of an underinsured motorist statute.

I could not locate any case which has addressed whether an airplane is a motor vehicle for purposes of underinsured motorist coverage. But two cases from other jurisdictions cite the "public policy" of uninsured motorist statutes in support of holdings that mechanically propelled devices such as a dirt bike and a snowmobile are "uninsured motor vehicles." *Thompson v. Government Employees Ins. Co.,* 122 Ariz. 18, 592 P.2d 1284, 1286 (1979) (dirt bike); *Rooney v. Detroit Auto. Inter-Ins. Exch.,* 94 Mich. App. 448, 288 N.W.2d 445 (1979) (snowmobile).

As with a dirt bike or a snowmobile, the fact an airplane normally is not used on the highway should not control in determining whether an airplane is a motor vehicle. The significant facts are whether the device is mechanically self-propelled and was being used in the space contemplated for users of a public road at the time in question. This space includes not only the roadway's surface, but also airspace necessary to utilize the road. Although an airplane colliding with a vehicle driven on the highway is not a common occurrence, it is not without precedent.[4] If the airplane is underinsured, then RCW 48.22.030(1) should apply to protect the innocent injured victims.

My conclusion is buttressed by the rule of statutory construction that presumes the Legislature, in enacting a law, intends it to be consistent with existing relevant statutes. *Sanchez v. Department of Labor & Indus.,* 39 Wn. App. 80, 85, 692 P.2d 192 (1984); *Citrano v. Berkshire Mut. Ins. Co.,*

---

[4]We can take judicial notice that when the propeller has ceased to turn effectively, unless divine guidance occurs, the laws of physics mandate a generally downward attitude. That attitude necessarily means there will be a contact with the ground not originally anticipated. Obviously, contact with some areas of the ground are more survivable than others, and it is foreseeable that a pilot, after considering all the circumstances, may determine that a highway is the only practical surface available for an emergency landing. In fact, the record here contains an Aviation Accident Data System report from the National Transportation Safety Board which reflects that 157 collisions between airplanes and land motor vehicles occurred in the 11-year period from January 1971 to December 1981. These numbers indicate to me that an interpretation of the statute which includes airplanes would serve the policy of protecting motorists while not appreciably impacting insurance companies.

171 Conn. 248, 368 A.2d 54, 57 (1976). Here, RCW Title 48, the title which encompasses underinsured motorist coverage, also defines "vehicle insurance" as "insurance against loss or damage to any land vehicle or *aircraft* or any draft or riding animal . . . and against any loss or liability resulting [therefrom] . . ." (Italics mine.) RCW 48.11.060. By adding the adjective "motor" to the term "vehicle" in RCW 48.22.030(1), the underinsured motorist statute, the Legislature excluded draft or riding animals, but did not exclude airplanes.[5]

The insurer and the majority also argue that to include airplanes in the phrase "motor vehicle" is inconsistent with the meaning of "motor vehicle" as used in subsection 2 of RCW 48.22.030, which states:

> No . . . policy . . . insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage . . . shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . .

(Italics mine.) There is no inconsistency. The broad overriding public policy stated initially in this dissent from *Finney* applies to subsection 2 also and supports an interpretation of "motor vehicle", as used there, that includes airplanes.

Justice Holmes has commented that "[t]he true grounds of decision are considerations of policy and of social advantage, and it is vain to suppose that solutions can be attained merely by logic and the general propositions of law which nobody disputes." H. Shriver, *The Judicial Opinions of Oliver Wendell Holmes* 65 (1940). Here, the majority's reliance on the general rule that terms in insurance con-

---

[5]Thus, *Brown v. Farmers Ins. Group*, 31 Wn. App. 593, 643 P.2d 926 (1982), which held that a motorist who collided with a riderless horse was not covered by the uninsured motorist provision of his policy, is distinguishable. A horse is not a motor vehicle, *i.e.*, it is not a mechanically self–propelled device, to say nothing of several other differences too numerous and personal to the horse for this footnote.

tracts are to be given their common and ordinary meaning subverts the Legislature's policy decision that persons injured or damaged by financially irresponsible motorists should be protected. That public policy is no "unruly horse", as described by the majority, but a long recognized principle that runs like a thread connecting Washington's reported decisions in this area.

Keeping in mind that broad public policy, I would hold RCW 48.22.030(1), which uses "motor vehicle", rather than "land motor vehicle" or some other restrictive term, provides protection to persons injured in roadway collisions with uninsured airplanes.

Review denied by Supreme Court November 4, 1987.