110 Wn.2d 207 (1988)
750 P.2d 1247
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Respondent,
v.
RUSSELL ZUVER, as Personal Representative, ET AL, Petitioners.
No. 53972-3.
The Supreme Court of Washington, En Banc.
March 3, 1988.
*208 Gary W. East, for petitioners.
Reed, McClure, Moceri, Thonn & Moriarty, by William R. Hickman and Heather Houston Reeve, for respondent.
DOLLIVER, J.
This is a declaratory judgment action to determine insurance coverage under an aviation policy. The insured was a pilot with a visual flight rating who crashed under weather conditions normally requiring an instrument flight rating.
Phillip E. Strathy took off at approximately 11:20 a.m. on June 19, 1983, in his private Piper Cherokee airplane. His passengers included his three daughters and a friend, Thomas Zuver. Strathy departed from Martha Lake on a route to Eastern Washington which would take him over the Cascade Mountains. Prior to takeoff Strathy telephoned the Federal Aeronautics Administration Seattle Flight Service Station for a weather briefing. Other than a precaution for "mountains occasionally obscured", his flight plan was approved. Within one-half hour after departing, he crashed into Glacier Peak at the 10,000-foot level, killing all aboard.
Strathy held a visual flight rating (VFR). The crash *209 occurred under weather conditions usually requiring an instrument flight rating (IFR). Strathy's liability insurance carrier, plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National), tendered a defense under a reservation of rights to disclaim coverage and filed an action for declaratory judgment. At issue is the interpretation of two provisions in the policy.
The first provision is an exclusionary clause which provides:
This policy does not apply:
...
2. To any insured while the aircraft is in flight

(a) if piloted by other than the pilot or pilots designated in the Declarations;
(b) if piloted by a pilot not properly certificated, qualified and rated under the current applicable Federal Air Regulations for the operation involved, whether or not said pilot is designated in the Declarations;
...
(Some italics ours.)
The second provision is a pilot warranty which provides, in part:
1. Insurance will be effective only when the operation of the insured aircraft ... is by a pilot ... who possess [sic] a current and valid pilot certificate of the kind specified with appropriate ratings, ... all as required by the Federal Aviation Administration for the flight involved ...
(Italics ours.)
In a split decision, the Court of Appeals affirmed the trial court judgment that Strathy had violated Federal Aviation Administration (FAA) regulations for visual flight and was thereby excluded from coverage under the policy. National Union Fire Ins. Co. v. Zuver, 47 Wn. App. 540, 736 P.2d 675 (1987). The petitioners are the representatives of the decedents' estates. We granted the petition for review.
Petitioners argue the exclusionary clause creates an ambiguity with the pilot warranty endorsement because the *210 term "for the operation involved" is not defined in the policy, thus creating confusion with the pilot warranty endorsement phrase "for the flight involved".
National contends the phrase "for the operation involved" is not ambiguous and requires a different meaning than "for the flight involved" because the "operation" of the plane is not the same as the "flight" of the plane.
[1, 2] The general rules for interpreting insurance contracts are well settled law. If the policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity where none exists. Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 545 P.2d 1193 (1976). However, it is a rule of insurance contract construction that an insurance policy must have meaning to lay persons who at their peril may be legally bound or held to understand the nature and extent of its coverage. Vadheim v. Continental Ins. Co., 107 Wn.2d 836, 840, 734 P.2d 17 (1987). This requires policy language to be interpreted in accordance with the way it would be understood by the average person. Vadheim, at 841.
In construing the language of a provision, we will examine the contract as a whole and, if on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists. State Farm Gen. Ins. Co. v. Emerson, 102 Wn.2d 477, 484, 687 P.2d 1139 (1984); Morgan, at 435. If any clause in the policy is ambiguous, a meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. Vadheim, at 841; Morgan, at 435. Here, we are asked to interpret an exclusionary clause. Exclusionary clauses are to be most strictly construed against the insurer. Vadheim v. Continental Ins. Co., at 841.
National's insurance policy defines "in flight" as "the time commencing with the actual take-off run of the aircraft and continuing thereafter until it has completed its landing roll ..."
Therefore, National argues, the phrase "for the operation involved" in clause 2(b) logically has a different meaning in *211 the exclusion provision than "for the flight involved" has under the pilot warranty endorsement  the latter referring to the actual flight of the aircraft and the former designating who is qualified to operate the craft under Federal Air Regulations (FAR), e.g., VFR or IFR ratings, commercial or private ratings, etc.
Petitioners contend "operation involved" could just as reasonably mean the manner by which the entire flight was conducted. Such interpretation would avoid placing a trier of fact in the position of determining whether a pilot was properly rated for the weather conditions at the time of the crash. The trial court in this case was placed in that position.
We agree the term "operation involved" is ambiguous. Thus, construing it most favorably to the insured, "operation involved" refers to the flight as a whole, from its inception, rather than as a segmented, moment-by-moment series of incidents.
[3] Although the specific issue involves National's insurance policy with respect to Strathy's coverage, it underlies a broader question affecting aviation insurance: should a pilot's flight insurance coverage vary with the weather conditions during the flight? Strathy took off under VFR weather conditions. However, he encountered IFR weather along his flight path. No witness could testify to the exact cause of the crash or to the exact weather conditions. After hearing circumstantial evidence and speculative opinions, the trial court concluded "Strathy was not certified, qualified and rated under the current applicable federal air regulations for the operation involved, i.e. flying within one mile of horizontal cloud clearance prior to impact with Glacier Peak." (Italics ours.) The court further found Strathy more probably than not hit Glacier Peak under IFR conditions, a rating Strathy did not hold.
Petitioners argue that National's interpretation of paragraph 2(b) forces the court to examine minutely every segment of a flight to determine when, in what manner, and for how long insurance coverage is in effect. Under *212 National's interpretation of the policy language, for example, a pilot could file a VFR flight plan from Bellingham to Olympia and lose insurance coverage if IFR flying conditions suddenly were encountered during the flight. Weather forecasts are not absolute; the Puget Sound region illustrates this fact.
If, as petitioners urge, the flight is viewed as a whole, and the words "operation involved" mean conduct of the entire flight, then insureds will know with certainty whether their insurance covers the operation of the aircraft for the flight involved. This interpretation and method was adopted by two courts in the cases of National Ins. Underwriters v. King Craft Custom Prods., Inc., 368 F. Supp. 476 (N.D. Ala. 1973) and Glover v. National Ins. Underwriters, 545 S.W.2d 755 (Tex. 1977). These courts found insurance coverage should be determined at the inception of a flight. This approach is referred to as the "inception rule".
In King Craft, the pilot only held a VFR rating. He took off under VFR conditions but later encountered IFR conditions and crashed. The court did not use the term "inception rule", but it attacked the concept of a pilot having coverage "flickering on and off as particular weather conditions were encountered." National Ins. Underwriters v. King Craft Custom Prods., Inc., supra at 479.
The same situation existed in Glover and with the same insurance company. However, the Glover court expounded on the King Craft approach in determining whether a flight was VFR or IFR. In addition to viewing the flight in its entirety, the court stated: "The weather conditions existing at the beginning of the flight should ... be looked to in determining whether the flight is a VFR or an IFR flight." Glover v. National Ins. Underwriters, supra at 762.
Petitioners' argument is in line with a recent Court of Appeals decision, Transport Indem. Co. v. Sky-Kraft, Inc., 48 Wn. App. 471, 740 P.2d 319 (1987), which adopted the "inception rule". Justice Utter, writing for a unanimous *213 court, reasoned:
The analysis in King Craft and Glover provides the court with a means to determine the character of a flight without resort to speculation or conjecture.... Generally, in aviation accidents there is very little, if any, physical evidence or eyewitnesses to assist the court in making a segmented analysis. Thus, a court would be forced into a process of formulating conclusions founded upon mere probabilities.
Transport Indem. Co., at 478-79. The Court of Appeals went on to hold that "a flight is to be characterized as a whole, according to the weather conditions existing at the inception of the flight." Transport Indem. Co., at 481. We are persuaded the "inception rule" is the better approach and hereby adopt it.
In United States Fire Ins. Co. v. Marr's Short Stop of Tex., Inc., 680 S.W.2d 3 (Tex. 1984), the Texas Supreme Court held a pilot's knowledge of weather conditions was a determinative factor in characterizing a flight. Thus, if at the time of the inception of the flight the pilot knew "he was flying into IFR weather", then the flight was an IFR flight and recovery under the policy would be precluded. Marr's, at 6. The Court of Appeals in Transport Indemnity pointed out the error of this analysis:
The pilot knowledge test articulated by the majority in Marr's is misplaced. Such a test would require this court to adopt the precepts of negligence law for a cause of action arising out of contract construction, without any showing of causation between the pilot's knowledge or lack of knowledge and the crash. Marr's, at 11 (Ray, J., dissenting). Therefore, we agree with the analysis and result in Glover that a flight is characterized solely by the weather conditions existing at the point of departure.
Transport Indemnity, at 483.
We concur with this analysis. In order to avoid any misunderstanding, we emphasize it is the weather conditions at the time and place of departure which are controlling.
*214 Phillip E. Strathy was covered under the policy; the Court of Appeals is reversed.
PEARSON, C.J., DORE, J., and HOLMAN and JAMES, JJ. Pro Tem., concur.
GOODLOE, J. (concurring)
Resolution of this case depends upon this court's interpretation of a specific phrase in an aviation insurance policy issued by the respondent, National Union Fire Insurance Company (National) to the insured, Phillip E. Strathy. The policy contains an exclusion from coverage for damages accruing under situations where the pilot is not properly certificated "for the operation involved." Clerk's Papers, at 2. National contends that this exclusion releases it from liability for a fatal crash which more likely than not occurred while Mr. Strathy, a pilot certificated to fly only under visual flight rating (VFR) conditions, was flying under weather conditions requiring an instrument flight rating (IFR). According to National's argument, Strathy's action in allegedly flying into a cloud bank was an "operation" for which he was not certificated and therefore fell within the terms of the exception. The petitioners contend that the term "operation involved" refers to the entire flight from takeoff to landing at the intended destination, regardless of weather conditions encountered en route. The majority of this court concludes that the phrase "operation involved" is ambiguous and, as such, should be construed against the insurer and in favor of the petitioners. I agree with this narrow holding.
Unfortunately, after deciding the case, the majority goes on to consider an issue of far greater scope: whether as a general rule aviation insurance should cover a VFR pilot flying in non-VFR weather conditions. In doing so, the majority purports to interpret insurance policies not before the court. I cannot concur in this action.
In its opinion, the majority adopts a rule of factual interpretation called the inception rule. Under the inception rule, each flight is characterized as a whole, either as a VFR *215 or an IFR flight according to "the weather conditions at the time and place of departure". Majority opinion, at 213. The majority specifically excludes from consideration any knowledge the pilot may have had at the time of takeoff concerning weather conditions along the intended flight path, as well as the actual weather conditions encountered in flight. Indeed, under the majority's explanation of the inception rule, clear weather at the time and place of takeoff guarantees insurance coverage for a VFR pilot for the entire flight, even if the pilot deliberately chooses to violate the Federal Aviation Regulations (FAR's) requiring VFR pilots to fly only under weather conditions allowing specified ranges of visibility. Therefore, under the majority's analysis, a VFR pilot could take off from an airport in Yakima or Spokane under clear skies, knowing that poor weather conditions exist over the mountains; that pilot could continue west and, upon encountering conditions under which he is not qualified to fly, continue onward, deliberately entering cloud banks which obscure his view, all without disrupting his insurance coverage. Because I cannot agree that an insurance company should be liable for damages resulting from a pilot's deliberate noncompliance with the restrictions on his license, I cannot support the adoption of the inception rule as stated in the majority opinion.
Perhaps a more troubling aspect of the majority opinion, however, is that it impliedly requires that the inception rule be applied to all aviation insurance policies, irrespective of policy language. Even assuming, arguendo, that the inception rule yields an appropriate result under an insurance policy covering flights for which the pilot has been certified or, as in the present case, where an ambiguous provision of the policy is so interpreted, I find it highly inappropriate to hold that the inception rule should be applied in all aviation cases. Such a holding effectively deprives insurers of the right to contract specifically for coverage extending only so far as does the pilot's certification to fly. Although no such policy is before the court, it *216 would be possible to draft an aviation policy which would clearly exclude coverage should a VFR pilot violate the FAR's by deliberately flying into a cloud bank when he could have avoided doing so by rerouting or aborting the flight. Should a policy containing such a provision come before this court, I believe it would be the court's duty to uphold the policy according to its clear meaning. I therefore object to the majority's universal adoption of the inception rule.
BRACHTENBACH, ANDERSEN, and DURHAM, JJ., concur with GOODLOE, J.